COMMONWEALTH *vs.* MICHAEL ADAMS
(and five companion cases[1] ).

Suffolk. April 7, 1993. - August 5, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Joint Enterprise. Practice, Criminal*, Severance. *Constitutional Law*, Confrontation of witnesses. *Evidence*, Relevancy and materiality, Admissions and confessions, Voluntariness of statement. *Error*, Harmless.

At the joint trial of two criminal defendants who elected not to testify, the denial of their motions for severance, and the admission, over objection, of each defendant's tape recorded statement to police in evidence against his codefendant, violated both defendants' confrontation rights guaranteed by the Sixth Amendment to the United States Constitution, and, in the circumstances, the error was not harmless beyond a reasonable doubt. [57-60]

The judge at a murder trial did not abuse his discretion in admitting in evidence a videotape recording of one defendant smiling in the direction of the camera shortly after his arrest, where this evidence was relevant to his claim that he had been beaten by police shortly before the recording was made. [60]

At the trial of a defendant who was seventeen years of age at the time of his arrest, the jury should have been permitted, under the Massachusetts "humane practice," to hear proffered testimony tending to show that the presence of his mother during his interview with police was psychologically coercive and affected the voluntariness of his confession to them. [60-61]

INDICTMENTS found and returned in the Superior Court Department on March 21, 1990.

The cases were tried before *James D. McDaniel, Jr.*, J.

*Charles W. Rankin* for Michael Adams.

---

[1] Three indictments against Patrick Nerette and two additional against Michael Adams.

*Dana Alan Curhan* (*Michael Doolin* with him) for Patrick Nerette.

*Ronald L. Rubin* of California (*Mark D. Zanini*, Assistant District Attorney, with him) for the Commonwealth.

LIACOS, C.J. After a joint jury trial, the defendants, Michael Adams and Patrick Nerette, were each convicted of murder in the first degree, armed robbery, and unlawfully carrying a firearm. Each was sentenced to life imprisonment without the possibility of parole for the murder conviction, a second life term for the armed robbery conviction and from three to five years for the firearm conviction, all sentences to be served concurrently. In this appeal, both argue that the trial judge's denial of their motions for severance and the admission of each other's statements violated their right to confrontation guaranteed by the Sixth Amendment to the United States Constitution. We agree, except that Adams' conviction of unlawfully carrying a firearm may stand. Both defendants raise other points of error; we shall discuss only those likely to recur at retrial.

On March 13, 1990, the victim was killed by a single gunshot to her head while working as a clerk at a liquor store in the Dorchester section of Boston. A bystander saw Nerette, followed by Adams, run from the store. Police officers on patrol nearby saw Adams leave the store. When approached by the officers, Adams dropped a bag containing coins, and ran away. One of the officers saw a rifle protruding from Adams' pant leg. After a chase, Adams was apprehended and arrested. The rifle was recovered from a sofa on the porch of a house into which Adams had run during the chase. Later that day, in the presence of his mother (Adams was seventeen years old at the time) and police officers, Adams gave a statement admitting his involvement in the incident. He identified Nerette as a participant. Two days later, Nerette was arrested and also gave the police a statement.

Contained in these statements is the only evidence presented at trial that describes the events leading to the victim's death. In the basic outline of events, the statements interlock and corroborate one another. As to certain significant

details they vary drastically. We shall describe first the portions of the statements that interlock: Sometime before the shooting, Adams and Nerette obtained a sawed-off .22 caliber rifle, which one of them loaded with a bullet and test-fired. Adams concealed the gun in his pants, and the two walked to the liquor store. When they arrived, Nerette went inside the store to determine whether a surveillance camera was present, and to make sure that only the clerk was in the store. He rejoined Adams outside, and the two entered together. As they attempted to rob the clerk, a scuffle broke out. Adams removed the rifle from his pants. One of the defendants shot the clerk in the head. Nerette attempted unsuccessfully to open the cash register drawer. Adams broke a glass mug filled with coins whose handle was secured to the counter by a chain. Adams tucked the rifle in his pants, and the two men left the store.

In his statement, each defendant placed on the other blame for masterminding the robbery, providing the gun and the bullets, test-firing the gun, and shooting the victim. Each defendant described circumstances in which the other was the active participant and he, the reluctant follower. Both of these extrajudicial statements were played for the jury.[2] Because each defendant exercised his right not to testify at trial, the statements were not subject to cross-examination.

The judge erred when he admitted these statements over the defendants' objections. *Bruton* v. *United States*, 391 U.S.

---

[2] The "statements" are in the form of tape-recorded conversations between each defendant and the police. The recordings were played for the jury at trial. Prior to playing the tape, certain portions of the statements were redacted. The judge did not order redacted all references to the nondeclarant. Cf. *Richardson* v. *Marsh*, 481 U.S. 200, 208-209 (1987) (codefendant's confession admissible when all references to other defendant redacted). See *Commonwealth* v. *Moran*, 387 Mass. 644, 653 n.4 (1982).

Adams argues in this appeal that the redactions unfairly altered the sense and meaning of his statement. Because the redactions were apparently designed to minimize prejudice to the nondeclarant, our ultimate conclusion that the statements ought not to have been admitted in a joint trial renders discussion of this point unnecessary as it is unlikely to recur at retrial.

123 (1968), and its progeny prohibit the admission at a joint trial of an extrajudicial statement made by a nontestifying codefendant when the statement implicates his or her codefendant. *Id.* at 135-136. See *Cruz* v. *New York*, 481 U.S. 186 (1987). Admission of such statements violates a defendant's right to confront witnesses against him, even if the judge instructs the jury to consider the statement only against the declarant. *Bruton, supra* at 135-136. *Commonwealth* v. *Dias*, 405 Mass. 131, 136 (1989).

We have stated repeatedly that: "According to *Bruton*, severance is constitutionally required where: a codefendant's extrajudicial statements are offered in evidence at a joint trial; the statements are 'clearly inadmissible' as against the defendant; the codefendant does not testify; and, finally, there is a substantial possibility that, in determining the defendant's guilt, the jury relied on the codefendant's 'powerfully incriminating extrajudicial statements' notwithstanding any limiting instructions from the judge." *Commonwealth* v. *Pontes*, 402 Mass. 311, 314 (1988), citing *Bruton, supra* at 128 & n.3, 135-136. See *Commonwealth* v. *Hawkesworth*, 405 Mass. 664, 674 (1989).

The Commonwealth conceded at oral argument (and implicitly in its brief) that admission of the statements falls under the rubric of *Bruton*, and that the judge erred when he admitted them. Not disputing the basic error, the Commonwealth instead argues that reversal is not necessary because the error was harmless beyond a reasonable doubt. See *Cruz, supra* at 194. The test whether a *Bruton* error is harmless "is stringent, requiring reversal unless any 'spillover' resulting from imperfect interlock [of the confessions] 'was without effect on the jury and did not contribute to the verdict.' " *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 (1987), quoting *Commonwealth* v. *Marini*, 375 Mass. 510, 521 (1978).

The Commonwealth contends that the error here was harmless because each confession, considered only against the defendant who made it, contained sufficient evidence from which the jury could infer the requisite elements of the crimes charged. The Commonwealth proceeded on a theory

of joint venture, and thus was required to prove that each defendant had the requisite intent to commit the crime (here, the underlying felony of armed robbery). See *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). As the Commonwealth sees it, each confession contains "ample" evidence from which the jury could infer that the declarant intended to commit armed robbery. This is not the standard outlined in *Sinnott, supra.* It does not follow that, since the jury could have gleaned the requisite elements of the crimes from Adams' and Nerette's respective statements, the other's confession was "without effect" and "did not contribute to the verdict[s]."

Because each defendant's confession portrays the other as the mastermind and triggerman and himself as a reluctant follower, it is difficult to imagine that one confession did not contribute to the verdicts against the other.[3] See *Commonwealth* v. *Cunningham*, 405 Mass. 646, 650-651 (1989) (although other evidence tended to show requisite intent, reversal necessary because "we cannot know what the jury regarded as critical"). We cannot say that the error here was harmless beyond a reasonable doubt.[4] Adams and Nerette

---

[3]The judge did instruct the jury to consider each confession only against its maker. *Bruton* v. *United States*, 391 U.S. 123 (1968), clearly holds that such an instruction is insufficient to protect the codefendant's rights. *Id.* at 135-136. Moreover, the judge compounded the problem when he tacked onto his limiting instruction an instruction that the jury could consider against both defendants any statements made in furtherance of a joint venture (assuming they found a joint venture). The only statements presented, however, were the result of custodial interrogations, and could not be in furtherance of the joint venture.

[4]We except from this statement the verdict against Adams for unlawfully carrying a firearm. Eyewitness testimony and other significant evidence (rifle was recovered on the porch shortly after Adams had run there) showed that Adams carried the rifle. For this reason, we conclude that the *Bruton* error was harmless beyond a reasonable doubt as to that indictment. See *Commonwealth* v. *Sinnott, supra* at 873 (*Bruton* error harmless where codefendant's confession merely cumulative of eyewitness testimony of crucial acts).

must be retried; if their statements are to be admitted, they must have separate trials.[5]

We turn to the issues raised in this appeal that are likely to recur at retrial.

Nerette argues that the judge erred when he admitted a videotape of Nerette smiling into the camera just after his arrest. Nerette claims that the videotape was not relevant to any issue before the jury, and was introduced only to suggest that he lacked remorse. As such a suggestion, he contends, the videotape "was the functional equivalent of improper character evidence." See *Commonwealth* v. *Harris*, 409 Mass. 461, 469 (1991). The judge found that the evidence was relevant because Nerette had argued that the police had beaten him prior to his interrogation (which occurred shortly before the videotaping). Although still photographs taken around the time of the videotaping also showed Nerette's physical condition, we cannot say that the judge abused his discretion in holding that the videotape's probative value outweighed any prejudicial effect, and was not merely cumulative of the still photographs. Cf. *id.*

Adams argues that the judge's exclusion of certain testimony regarding his relationship with his mother prevented the jury from meaningfully considering the voluntariness of his confession as required by the "humane practice" rule. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 (1982). At the hearing on his motion to suppress his confession, Adams presented the testimony of his mother (who was present when Adams made his statement to the police) and a forensic psychiatrist tending to show that Adams was psychologically coerced into confessing due to the presence of his mother.[6] This coercion allegedly resulted from the fact that Adams had assisted his mother in overcoming a drug addiction and, consequently, he felt com-

---

[5]We do not address separately the defendants' arguments that severance was required because their defenses were mutually antagonistic and irreconcilable. See *Commonwealth* v. *Moran*, 387 Mass. 644, 660 (1982).

[6]Adams does not contest the judge's denial of this motion.

pelled not to upset her emotionally. At trial, Adams' mother began to testify to these facts, but the judge excluded all such testimony.

We agree with Adams that the jury should have been allowed to hear this evidence. The cases the Commonwealth relies on, where a parent's presence was seen as a measure to protect the rights of a defendant (usually a juvenile), do not speak to circumstances where there is evidence that the presence of the parent is psychologically coercive and itself affects the voluntariness of the confession. See *Commonwealth v. Guyton*, 405 Mass. 497, 501 (1989); *Commonwealth v. A Juvenile*, 389 Mass. 128, 131-134 (1983). See also *Commonwealth v. Philip S.*, 414 Mass. 804 (1993). Although the judge properly instructed the jury regarding the need to determine voluntariness, he erred when he prevented them from hearing evidence relevant to this issue. See *Commonwealth v. Johnston*, 373 Mass. 21, 25 (1977).[7]

The judgments of conviction are reversed, except Adams' conviction of unlawfully carrying a firearm. The other verdicts are set aside, and the cases are remanded for retrial.

*So ordered.*

---

[7]As with the *Bruton* error, this conclusion has no bearing on Adams' conviction of unlawfully carrying a firearm. There was sufficient evidence beyond what was contained in the statements to support this conviction.