## Commonwealth *vs.* Patrick Nerette.

Suffolk. September 8, 2000. - October 10, 2000.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Sosman, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Capital case. *Evidence,* Expert opinion.

The trial judge at a murder trial did not err in denying the defendant's motion for a new trial, based on a claim of ineffective assistance of trial counsel for counsel's failure to call an expert witness to give an opinion that the defendant's statement to police was involuntary, where the judge ruled that the expert's opinion would have been inadmissible had it been offered [537-538]; or for counsel's failure to call a lay witness on the same subject, which was a reasonable tactical decision [539].

No reason appeared on the record of a murder trial for this court to exercise its power under G. L. c. 278, § 33E, to grant a new trial or reduce the verdict. [539]

Indictments found and returned in the Superior Court Department on March 21, 1990.

Following review by this court, 416 Mass. 55 (1993), the cases were tried before *Robert W. Banks,* J., and a motion for a new trial was heard by him.

*Stephen Neyman* for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

Greaney, J. A jury in the Superior Court convicted the defendant of murder in the first degree on the theory of felony-murder committed as a joint venturer with Michael Adams; armed robbery (predicate felony); and unlawfully carrying a firearm.[1] We have before us the defendant's appeal from his

---

[1]The defendant was tried and convicted on these charges in 1990. His convictions were reversed and a new trial ordered, see *Commonwealth* v. *Adams,* 416 Mass. 55 (1993), where we held that his case should have been severed for trial from that of the codefendant, Michael Adams, under the constitutional protections provided by *Bruton* v. *United States,* 391 U.S. 123 (1968).

convictions in which he does not assert any trial error but seeks a new trial pursuant to G. L. c. 278, § 33E. He has also appealed from the denial of his motion for a new trial, which was based on a claim of ineffective assistance of trial counsel. We affirm the murder and firearm convictions and the order denying the defendant's motion for a new trial. We vacate, as duplicative, the defendant's conviction and sentence on the armed robbery charge and order that indictment be dismissed.

1. The following provides the background necessary to decide the appeal.

(a) The jury could have found that on March 13, 1990, the victim was killed by a gunshot blast to her head while she was working as a clerk at a liquor store in the Dorchester section of Boston. A customer who had left the store saw two men running from the direction of the store. Police officers on patrol saw Adams leaving the store. When approached by the officers, Adams ran and then dropped a bag holding a container of coins and a few dollar bills. One of the officers saw Adams reach into his pants and pull out what appeared to be a weapon. After a chase, Adams was caught and arrested. The weapon Adams had been carrying was seized. That weapon was a .22 caliber semi-automatic rifle, with its stock cut off and its barrel shortened, so that the rifle's over-all length measured about twenty-two inches. Adams gave the police a statement that admitted his involvement in the crime, but identified the defendant as the mastermind of the venture. *Commonwealth* v. *Adams*, 416 Mass. 55, 56-57 (1993). Two days later, the defendant was found by the police hiding in a closet in a Dorchester apartment, and he was arrested.

(b) After his arrest, the defendant gave the police a statement. The defendant admitted that he had gone with Adams to hold up the store; that he (the defendant) had loaded the rifle and given it to Adams before they reached the store; that he (the defendant) had gone into the store first to see if there were surveillance cameras inside; that he (the defendant) had tried to open the cash register, but could not do so; and that, after the victim was shot, Adams grabbed a container of coins from the counter, put the rifle inside his pants, and they both ran from the store. In his statement, the defendant tried to make it appear that Adams had badgered him into participating in the holdup; that the victim had been shot by accident; that Adams, not he, had killed the victim; and that, throughout, he had been only a

reluctant follower of Adams. The defendant's statement was tape recorded and played in court for the jury. Additionally, the police videotaped the defendant to depict how he appeared after his statement had been recorded.

(c) The defense at trial centered on the assertion that the defendant's statement to the police was involuntary. This defense was supplemented, in a minor way, by a claim that the police investigation had been inadequate. The defendant did not testify at his trial. The claim as to the involuntariness of the statement was advanced by the defendant's trial counsel by thorough cross-examination of the lead detective who took the statement. That cross-examination emphasized the youth of the defendant (age seventeen years), the detective's experience at interrogation, and the fact that the defendant had been questioned for some time before the tape recorder was turned on. The defendant's trial counsel argued to the jury in his summation that the police had coerced the defendant into giving the statement. In his final instructions to the jury, the judge clearly explained that, before they could credit the defendant's statement, they had to find, beyond a reasonable doubt, that the statement had been given voluntarily.[2]

(d) Represented by new counsel, the defendant filed a motion for a new trial in which he claimed that his trial counsel was ineffective for failing to present testimony of two witnesses who, it was asserted, would have supported his assertion that his statement to the police was involuntary. The first witness was an attorney, Josh Dohan, who had represented the defendant in other criminal matters. Dohan allegedly would have testified that he had seen the defendant after he had been questioned by the police and he had observed that the defendant had a bump on his head and a swollen eye. The second witness was a psychologist who, based essentially on information furnished by the defendant, opined that the defendant's statement had been psychologically coerced.[3] The judge held an evidentiary hearing on the motion at which the defendant's trial counsel and the

[2]The jury were also given a similar instruction before the tape recording of the statement was introduced in evidence.

[3]Among other matters, the defendant apparently told the psychologist the following: that he had been assaulted during arrest; that prior to arrest he had smoked marijuana and had drunk a bottle of wine; that he had defecated in his pants and was confused and humiliated; that the police threatened him, demeaned him, and "berated and barraged [him] with insinuating questions"; that his prior experience with the "scared straight" program left him terrified

psychologist testified. The defendant and Dohan did not testify at the hearing. The judge subsequently denied the motion for a new trial in a written memorandum of decision.

2. We turn now to the primary issue on appeal, whether the defendant's trial counsel provided constitutionally adequate representation. That claim is based on what was presented at the hearing on the motion for a new trial. The defendant does not expressly argue that the standards in G. L. c. 278, § 33E, should be applied in our review of the denial of his motion for a new trial that is being considered in conjunction with our § 33E review of his appeal from his conviction of murder. We shall, nevertheless, apply the higher standard set forth in *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992), in deciding the claim, as we have done in other cases. See, e.g., *Commonwealth* v. *Dahl*, 430 Mass. 813, 819-820 (2000); *Commonwealth* v. *Erdely*, 430 Mass. 149, 153 (1999); *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999); *Commonwealth* v. *Finstein*, 426 Mass. 200, 204 (1997).

Under the *Wright* standard, we reject the defendant's claim. The same judge who decided the motion for a new trial presided at the trial. The judge brought to his analysis of the defendant's argument firsthand knowledge of how well the defendant's counsel represented the defendant before the jury. In his decision on the motion for a new trial, the judge stated that the defendant's trial counsel "attacked the voluntariness of the defendant's statement by aggressive cross-examination of Commonwealth witnesses." The trial record confirms this observation. The defendant's trial counsel mounted a vigorous challenge to the voluntariness of the statement by cross-examination designed to suggest to the jury that the police had employed interrogation tactics against a young suspect that were aimed at overcoming his will. The points made by the defendant's trial counsel were reinforced in his closing argument in an effort to persuade the jury that the Commonwealth had not shown beyond a reasonable doubt that the defendant's statement was voluntary. The testimony of the defendant's trial counsel at the hearing on the motion for a new trial did not aid the defendant's claim in any material respect. That testimony, combined with an assessment of the performance of the

during the interrogation; that he believed he would be beaten if he did not confess, and he assumed he could not have an attorney; and that his father, a police officer in Haiti, had beaten him on several occasions.

defendant's counsel at the trial, discloses that his experienced counsel, as the judge found, made "efforts on behalf of the defendant [that] were competent and reasonable."

The judge acted properly in rejecting the testimony of the defendant's psychologist offered at the hearing of the motion for a new trial. The psychologist based his opinion that the defendant's statement was involuntary almost entirely on information furnished him by the defendant (see note 3, *supra*), who did not testify. The judge was appropriately skeptical of the defendant's information in view of the evidence at trial, particularly the videotape, indicating that the defendant had not been abused by the police and that he had given his statement voluntarily hoping to exculpate himself and pin the blame on Adams. There is no suggestion that, when he gave the statement, the defendant suffered from mental illness or that he had any mental impairment. The psychologist's opinion contains no suggestion that the statement was the product of physical coercion. The psychologist conducted no testing to determine the defendant's intelligence level. The psychologist knew that the defendant, prior to giving his statement, had received, and responded affirmatively to, Miranda warnings,[4] and that the defendant, because of prior arrests, was familiar with the police and with the juvenile justice system. The psychologist admitted that, before formulating his opinion, he had neither listened to the audiotape of the defendant's statement nor watched the videotape made after the statement had been completed.

Based on the evidence at the motion hearing, the judge was warranted in finding that the "factors [underlying the psychologist's opinion] are ones that lay people are capable of assessing and considering on the issue of voluntariness," and in concluding that the psychologist's "opinion would not have provided assistance to the jury in deciding the voluntariness issue." See *Commonwealth* v. *Santoli*, 424 Mass. 837, 844 (1997); *Commonwealth* v. *LeFave*, 407 Mass. 927, 935 n.9 (1990). For these reasons, if no others, the judge properly denied the motion for new trial on the basis that "[d]efense counsel was not remiss in not retaining an expert as this court would not have permitted the testimony or opinion to reach the jury even if offered."

---

[4]At trial, a card containing the Miranda warnings, which had been signed by the defendant, was admitted in evidence. No argument is made by the defendant on appeal that his motion to suppress the statement was improperly denied because he did not receive, or understand, his Miranda warnings.

Finally, the defendant's trial counsel was not ineffective for failing to call Dohan as a witness. It is apparent that the defendant's trial counsel was aware of the information Dohan possessed, and that the decision not to call Dohan was the result of a reasonable assessment that Dohan's testimony would not materially assist the defendant's case. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 181 (1987).

3. Considering the record of the trial, we conclude that there is no reason to reduce the verdict or order a new trial on the murder conviction. The defendant was effectively represented at trial. The defendant wilfully participated in the robbery. The victim was defenseless and was shot and killed for the money in a coin container. The jury's verdict of felony-murder was amply supported and just.

4. The Commonwealth correctly concedes that the defendant is entitled to relief from the armed robbery conviction. See *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997).

5. We affirm the defendant's convictions of murder in the first degree and unlawfully carrying a firearm. The defendant's conviction of armed robbery and the sentence imposed thereon are vacated, and the armed robbery indictment is to be dismissed. We also affirm the denial of the defendant's motion for a new trial.

*So ordered.*