## COMMONWEALTH vs. A JUVENILE.

Suffolk.    December 7, 1982. — May 10, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Waiver of constitutional rights, Admissions and confessions. *Evidence,* Admissions and confessions. *Waiver.*

Statement respecting the standards to be applied in future cases in determining whether a juvenile has effectively waived his Miranda rights. [130-135]

Although the record of a hearing on a motion to suppress an inculpatory statement made by a thirteen year old juvenile showed that the juvenile's father was present during the interrogation of the juvenile by a police detective and that the detective read Miranda warnings to the father and the juvenile, the Commonwealth failed to sustain its burden of establishing a knowing and intelligent waiver by the juvenile of his right to remain silent where there was no showing that the father either understood these warnings or explained them to his son. [135-136]

COMPLAINT received and sworn to in the West Roxbury Division of the District Court Department on April 15, 1980.

On appeal to the Boston Division of the Juvenile Court Department, a motion to suppress was heard by *Ireland,* J., and the case was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*J. W. Carney, Jr.,* for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Marcy Cass,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

*Deborah G. Segal, Murray E. Singer & Edward Harris,* amici curiae, submitted a brief.

LYNCH, J.    The defendant, a juvenile, appeals from an adjudication of delinquency by reason of breaking and

entering a building in the nighttime and stealing therefrom. The juvenile contends that the finding of delinquency by a judge of the Boston Juvenile Court was improperly made because it was based on evidence contained in a statement made by the juvenile which was obtained in violation of his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and applicable to the States by the Fourteenth Amendment. *In re Gault*, 387 U.S. 1, 55 (1967). We conclude that the Commonwealth has not sustained its heavy burden of demonstrating that the statement made by the juvenile was obtained after a knowing and intelligent waiver by the juvenile of his rights, *Commonwealth* v. *Cain*, 361 Mass. 224 (1972), and, accordingly, we reverse the judgment of the Juvenile Court.

The facts are as follows. On April 13, 1980, Boston police Detective William B. Ahern began investigating a breaking and entering which had occurred on the preceding day at the Hyde Park Sporting Goods store. After receiving a telephone call from a woman who told him that the goods stolen from the store would be found at the juvenile's home, Detective Ahern proceeded to that address. There, Ahern spoke with the juvenile's parents. Following this conversation, Ahern and the parents went to the rear of the premises and discovered four large canvas bags filled with sporting goods stolen from the store. Ahern asked to speak to the couple's sons but the boys were not at home at that time. Ahern asked the father to bring his sons to the West Roxbury District Court the next morning for questioning.

On April 14, the father brought his two sons, the defendant, who was thirteen years old, and his brother, who was twelve years old, to the courthouse. Ahern began by questioning the older boy, who denied any involvement in the break-in. However, when Ahern questioned the younger boy, this boy claimed that his brother had broken the store's door and that they, along with two other boys, had stolen from the store. After Ahern had elicited the inculpatory statement from the younger boy, he read the standard

Miranda warnings to the boys' father. At the hearing on the juvenile's motion to suppress his statements, Ahern stated that he waited until this point to advise the father of the Miranda requirements because previously he "was only investigating an unsolved crime. Now it [became] accusatory, and I wanted them under the Miranda law." Ahern explained that he addressed the Miranda warnings to the father because "I always speak to the adult because these are only young boys." Ahern testified that the father appeared to understand the Miranda rights, but "[h]e was very upset" and wanted the boys to tell Ahern what they knew. Both boys then confessed their involvement in the theft. Subsequently, Ahern sought a complaint against the defendant in the juvenile session of the West Roxbury District Court. After a finding of delinquency, the juvenile appealed to the Appellate Division of the Boston Juvenile Court.

In the Boston Juvenile Court, the defendant's lawyer sought to suppress the statements made by the defendant at the courthouse. After a hearing the judge denied the motion. Both counsel stipulated that the same evidence presented at the hearing would be presented at trial. This procedure was used as a way to preserve the motion to suppress for appellate review without the necessity of a full trial. A jury-waived trial followed, at which the judge found the defendant delinquent and committed him to the custody of the Department of Youth Services. The defendant appealed and we granted the defendant's application for direct appellate review.

The constitutional right against self-incrimination was made fully applicable to cases involving juveniles in the case of *In re Gault,* 387 U.S. 1, 55 (1967). In that case, although the Court did not require that the Miranda warnings applicable to proceedings involving adults be given to juveniles,[1] it stated that juveniles, like adults, can waive the

---

[1] In the recent case of *Fare* v. *Michael C.,* 442 U.S. 707 (1979), the Court stated in a footnote that "this Court has not yet held that *Miranda* applies with full force to exclude evidence obtained in violation of its pro-

privilege against self-incrimination. However, the Court did recognize that "special problems may arise with respect to waiver" and that the "technique" of waiver may vary "depending upon the age of the child and the presence and competence of parents." *Id.* The Court emphasized that the "participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *Id.* Thus, although the Supreme Court has not specified a procedure for informing juveniles of their right against self-incrimination, the Court has implied that some form of warning must be given and that the presence of an informed adult, either a parent or lawyer, to counsel the juveniles on their rights is an important factor in evaluating whether a knowing, intelligent, and voluntary waiver of these rights has occurred.

Recent studies have confirmed this need for caution in evaluating a juvenile's waiver of his Fifth Amendment rights. These studies suggest that most juveniles do not understand the significance and protective function of these rights even when they are read the standard Miranda warnings. See, e.g., Grisso, Juveniles' Capacities to Waive *Miranda* Rights: An Empirical Analysis, 68 Calif. L. Rev. 1134 (1980). See also *In re Gault, supra* at 52 ("[A]uthoritative opinion has cast formidable doubt upon the reliability and trustworthiness of 'confessions' by children"); Ferguson & Douglas, A Study of Juvenile Waiver, 7 San Diego L. Rev. 39 (1970). Recognizing this inherent problem, a growing number of State courts and Legislatures have followed

---

scriptions from consideration in juvenile proceedings . . . . We do not decide that issue today. In view of our disposition of this case, we assume without deciding that the *Miranda* principles were fully applicable to the present proceedings." *Id.* at 717 n.4.

the spirit of *Gault* and mandated that before an admission can be obtained from a juvenile he must be advised of his rights through a reading of the Miranda warnings and be given the opportunity to consult with an adult who is informed of and understands these rights. See, e.g., *People* v. *Burton*, 6 Cal. 3d 375 (1971); *People* v. *Maes*, 194 Colo. 235 (1977); *Lewis* v. *State*, 259 Ind. 431 (1972); *State in Interest of Dino*, 359 So. 2d 586 (La.), cert. denied, 439 U.S. 1047 (1978); *Matter of Penn*, 92 Misc. 2d 1043 (N.Y. Fam. Ct. 1978); *J.T.P.* v. *State*, 544 P.2d 1270 (Okla. Crim. App. 1975); *Commonwealth* v. *Smith*, 472 Pa. 492 (1977); Colo. Rev. Stat. § 19-2-102 (3) (c) (I) (1978); Conn. Gen. Stat. § 46b-137 (1981); Mont. Code Ann. § 41-5-303 (2) (1981); N.M. Stat. Ann. § 32-1-27(A) (1981); Okla. Stat. Tit. 10, § 1109(a) (1981); Tex. Fam. Code Ann. § 51.09 (Vernon 1982); W. Va. Code § 49-5-8(d) (Supp. 1982). By adopting these standards courts and Legislatures have recognized the need for establishing an ascertainable basis for determining that a knowing and intelligent waiver has preceded the interrogation of a juvenile. These added protections are consistent with our legal system's traditional policy which affords minors a unique and protected status. The law presumes different levels of responsibility for juveniles and adults and, realizing that juveniles frequently lack the capacity to appreciate the consequences of their actions, seeks to protect them from the possible consequences of their immaturity. Moreover, by providing the juvenile with the opportunity for meaningful consultation with an informed adult, these procedures prevent the warnings from becoming merely a ritualistic recitation wherein the effect of actual comprehension by the juvenile is ignored. *Commonwealth* v. *Smith*, 472 Pa. 492, 497 (1977).

This court has also recognized the importance of parental involvement when a juvenile's Fifth Amendment rights are in issue. In *Commonwealth* v. *Cain*,[2] 361 Mass. 224 (1972),

---

[2] That decision was based on the assumption that the full panoply of Miranda warnings applies in juvenile cases. As we explained in note 1, *supra*, the Supreme Court has not yet gone this far.

we reversed the conviction of a fifteen year old boy after ruling that the Commonwealth failed to sustain its burden of
demonstrating that the juvenile knowingly and intelligently
waived his Miranda rights. There this court stated that,
when the defendant is a minor, the court must proceed with
"special caution" in reviewing a purported waiver. *Id.* at
228, quoting *In re Gault, supra* at 45. In *Cain* the boy had
been given the Miranda warnings and had agreed to waive
his rights, but the court held that the facts presented did not
demonstrate that the waiver was knowingly and intelligently made. In evaluating the circumstances of the waiver, the
court noted that the boy's father was in the police station at
the time of the interrogation, and that he asked repeatedly
to see his son but was not allowed to talk with his son until
after the boy had made the inculpatory statement. While
the court declined to consider whether a "boy of fifteen
years can [ever] waive his right to counsel in the absence of
his father, mother, or someone in loco parentis," *id.* at 229,
the court concluded that the Miranda warnings administered there were ineffective and that the boy should have
been permitted to consult with his father: "The *Miranda*
warning that the boy had a right to consult a lawyer was
hollow indeed when he was denied access to his father who,
practically speaking, was the only avenue through which he
could effectively evaluate and, if he wished, exercise the
right to counsel. See *Gallegos* v. *Colorado,* 370 U.S. 49, 54
(adult advice may be necessary to put juvenile defendant on
more equal footing with police) . . . ." *Commonwealth* v.
*Cain, supra* at 229 n.3.[3]

In those jurisdictions which have adopted the "interested
adult" rule, the courts have generally held that to demonstrate a knowing and intelligent waiver by a juvenile the

---

[3] Similarly, in *Taylor* v. *Commonwealth,* 369 Mass. 183, 192 (1975),
which involved the waiver of Fifth Amendment rights by a juvenile
witness, we stated that "[s]pecial caution is indicated where a juvenile
witness is involved, particularly one appearing without counsel, parents
or anyone else who might advise and guide him, to ensure that his rights
do not become forfeit through fear, confusion or intimidation."

State must first prove that the juvenile and his parent, or if a parent is not available, someone in loco parentis, were fully advised of the juvenile's right against self-incrimination through administration of the standard Miranda warnings. See, e.g., *Commonwealth* v. *Smith, supra.* We conclude that, for the Commonwealth successfully to demonstrate a knowing and intelligent waiver by a juvenile, in most cases it should show that a parent or an interested adult was present, understood the warnings, and had the opportunity to explain his rights to the juvenile so that the juvenile understands the significance of waiver of these rights. For the purpose of obtaining the waiver, in the case of juveniles who are under the age of fourteen, we conclude that no waiver can be effective without this added protection.[4] This procedure reflects our assumption that an informed parent, or person standing in loco parentis, will be better able to understand the child's rights, rights which a child of such tender years is unlikely to comprehend fully without the assistance of such a person. For cases involving a juvenile who has reached the age of fourteen, there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney to ensure that the waiver is knowing and intelligent. For a waiver to be valid without such a consultation the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile.

We believe that these procedures will have a salutary effect on the administration of juvenile justice. Giving the juvenile's parent the opportunity to participate in the explanation of the juvenile's constitutional rights and in any decision to waive those rights serves important purposes. First, this procedure involves the parent at the initial stage of the juvenile proceedings in which the parent obviously has a significant interest. Secondly, it ensures that the juvenile is fully advised of and understands these important

---

[4] This rule applies only to those cases pending on direct appeal, or as to which the time for direct appeal had not expired on the date of this decision, where the issue has been preserved.

constitutional rights. Moreover, establishment of definite procedures "has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible." *Fare* v. *Michael C.*, 442 U.S. 707, 718 (1979).

Applying the standards we have enunciated today, together with our traditional principles for determining whether constitutional rights have been waived, we conclude that the juvenile in this case did not voluntarily waive his rights. As we have stated, the Commonwealth has a heavy burden in demonstrating that a "defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972), quoting *Miranda* v. *Arizona*, 384 U.S. 436, 475 (1966). Our "appellate function requires that we make [an] independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found . . . .' *Brewer* v. *Williams*, 430 U.S. 387, 403 (1977)." *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977). Here, the judge below made no specific finding of voluntary waiver but rather simply denied the juvenile's suppression motion. Although the judge found that the juvenile's father was present during the interrogation and that Detective Ahern read the Miranda warnings to the father and the juvenile, the record does not reveal, and the judge made no finding, that the father either understood these warnings or explained them to his son. Although the juvenile subsequently made an inculpatory statement, there is no showing that the juvenile understood or waived his rights. In these circumstances we believe that the mere fact that the juvenile made a statement under interrogation does not give rise to a presumption of valid waiver. *Miranda, supra*; *Commonwealth* v. *Cain, supra* at 228-229. Since we are to "'indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson* v. *Zerbst*, 304

U.S. 458, 464 (1938), we are constrained by this record to conclude that the Commonwealth has not sustained its burden of demonstrating a knowing and intelligent waiver by the juvenile.

*Judgment reversed.*