## COMMONWEALTH *vs.* RAJI W. GUYTON.

Worcester. April 5, 1989. — August 7, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law*, Waiver of constitutional rights, Admissions and confessions. *Evidence*, Admissions and confessions, Relevancy and materiality. *Waiver*.

The Commonwealth failed to sustain its burden at a suppression hearing of establishing a juvenile defendant's knowing and intelligent waiver of his right to remain silent, where the juvenile did not have an opportunity to consult with a "interested adult" before waiving his rights, and where he was not shown to have been capable of waiving his rights despite the unavailability of consultation with an interested adult. [502-504] NOLAN, J., dissenting.

At a murder trial, the judge correctly admitted relevant and highly probative testimony of statements the defendant made before the date of the murder. [504]

INDICTMENTS found and returned in the Superior Court Department on November 12, 1985.

A pretrial motion to suppress evidence was heard by *Elbert Tuttle*, J., and the cases were tried before him.

*John J. Bonistalli* for the defendant.

*Claudia R. Sullivan*, Special Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. Following a trial by jury, the defendant was convicted of murder in the first degree and larceny. This is an appeal from those convictions. The defendant argues that the trial judge erroneously denied his motion to suppress statements he gave to the police as well as physical evidence seized pursuant to search warrants obtained on the basis of those statements. He also asserts that the judge erroneously admitted evidence of his prior misconduct, and that he was deprived of the effective assistance of counsel. Lastly, he requests that we

exercise our extraordinary power under G. L. c. 278, § 33E (1988 ed.), to order a new trial on the murder indictment or reduce the verdict to a lesser degree of guilt. We conclude that the motion to suppress should have been allowed and that a new trial is required on that ground. Thus, we need not reach the ineffective assistance of counsel claim, nor need we engage in a c. 278, § 33E, review. Because it is reasonably likely that the question concerning the admissibility of so-called "prior misconduct" evidence will arise again, we discuss that subject briefly at the end of our opinion.

Stanley Cymbura was a newspaper vendor and he delivered newspapers inside the building at 50 Franklin Street in Worcester. He generally wore a jacket in order to conceal the thousands of dollars that he kept on his person. The juvenile defendant and his sister lived in an apartment at 50 Franklin Street. Between 3 A.M. and 4:30 A.M. on March 3, 1985, the sister discovered Cymbura's body in an elevator in the building. The police first believed that Cymbura had died of a heart attack, but learned on the following day that asphyxiation was the cause of his death. After police investigation, the defendant was charged with responsibility for Cymbura's death.

In connection with his suppression motion, the defendant contends that the Commonwealth failed to sustain its burden of showing that he waived his right to remain silent guaranteed by the Fifth Amendment to the United States Constitution. The judge found the following facts after an evidentiary hearing on the motion. On the date of the incident, the defendant was sixteen years old and his sister, Leya-Anne Guyton, was seventeen. The police visited the Guyton apartment that day and, after learning that the defendant was out, left a telephone number for him to call when he returned. Later that day, the defendant called the police, agreed to meet officers in front of 50 Franklin Street, and then did so. The defendant voluntarily accompanied the officers to his apartment which he and Leya-Anne shared with their mother, two younger siblings, and Leya-Anne's infant daughter. The defendant's mother had gone to California and had left Leya-Anne in charge of the apartment and with general responsibility to supervise the defendant. The defendant's father lived in Boston.

According to the judge's findings, an officer gave the defendant the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), in the presence of Leya-Anne. Leya-Anne said that she understood the warnings. The defendant also said he understood them; that he had heard them all before. A detective told the defendant that a witness had seen the defendant counting large sums of money, and that it would "help [the defendant] out a great deal" if the money were recovered. The defendant immediately led the officers to a bag and a box containing a large sum of money.

The officers then told Leya-Anne that they were taking the defendant to the police station. They asked her if she would accompany the defendant, and she said she was unable to do so. On the way out of the building, the defendant told the police he had found the money. The defendant's statement was taken at the station. Before the statement was taken, however, an officer telephoned Leya-Anne "and placed [the defendant] on another line to overhear the conversation." The officer explained to Leya-Anne that she wished to interrogate the defendant and the officer read the Miranda warnings to Leya-Anne within the defendant's hearing. Leya-Anne said she understood the defendant's rights and that she did not object to the officer's interrogating the defendant. The defendant then signed the Miranda card and gave his statement.

The judge also found that the defendant was in police custody from the time he met the officers at 50 Franklin Street on the day of the incident, that the defendant and Leya-Anne understood the defendant's rights under *Miranda*, that the defendant's statements at 50 Franklin Street and at the police station were given by him voluntarily, and that Leya-Anne had consented to the questioning of the defendant by the police. In addition, the judge found that the defendant "prior to March 3, 1985 had extensive contact with the police and juvenile authorities and was well aware of his Miranda rights." The judge denied the motion to suppress, ruling as follows: "[T]he defendant received the rights he was required to be given under the provisions of *Miranda* v. *Arizona* and in accordance with the interested adult rule. See *Commonwealth* v. *A Juvenile*, . . . 389 Mass. 128 (1983)."

The defendant's statements to the police, which he unsuccessfully sought to have suppressed, including the defendant's nonverbal admission made by his retrieving the money and giving it to the police in the apartment, were admitted in evidence at trial as was physical evidence obtained as a result of those statements. It is undisputed that the police obtained a warrant to search the defendant and his apartment on the basis of an application that recited portions of the defendant's statement at the police station and that disclosed the large sum of money at his apartment. Pursuant to the warrant, the police seized the defendant's sneakers and took fingernail scrapings from the defendant. At the trial, the Commonwealth introduced evidence of blood on the sneakers and on the defendant's fingernails.

Whenever a criminal defendant's out-of-court statements are offered in evidence against him, the prosecution has a heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda, supra* at 475. *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972). When the defendant is a juvenile, "courts proceed with 'special caution.'" *Id.*, quoting *In re Gault*, 387 U.S. 1, 45 (1967). We have recently described at length the special sensitivity with which we and other courts approach the question whether a juvenile will be deemed to have waived his Miranda rights. We quote extensively from our opinion in *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 131-134 (1983): "Recent studies have confirmed [the] need for caution in evaluating a juvenile's waiver of his Fifth Amendment rights. These studies suggest that most juveniles do not understand the significance and protective function of these rights even when they are read the standard Miranda warnings. . . . Recognizing this inherent problem, a growing number of State courts and Legislatures have followed the spirit of [*In re Gault*, 387 U.S. 1 (1967)] and mandated that before an admission can be obtained from a juvenile he must be advised of his rights through a reading of the Miranda warnings and be given the opportunity to consult with an adult who is informed of and understands these rights. . . .

By adopting these standards courts and Legislatures have recognized the need for establishing an ascertainable basis for determining that a knowing and intelligent waiver has preceded the interrogation of a juvenile. These added protections are consistent with our legal system's traditional policy which affords minors a unique and protected status. The law presumes different levels of responsibility for juveniles and adults and, realizing that juveniles frequently lack the capacity to appreciate the consequences of their actions, seeks to protect them from the possible consequences of their immaturity. Moveover, by providing the juvenile with the opportunity for meaningful consultation with an informed adult, these procedures prevent the warnings from becoming merely a ritualistic recitation wherein the effect of actual comprehension by the juvenile is ignored. *Commonwealth* v. *Smith*, 472 Pa. 492, 497 (1977).

" . . . .

"In those jurisdictions which have adopted the 'interested adult' rule, the courts have generally held that to demonstrate a knowing and intelligent waiver by a juvenile the State must first prove that the juvenile and his parent, or if a parent is not available, someone in loco parentis, were fully advised of the juvenile's right against self-incrimination through administration of the standard Miranda warnings. See, e.g., *Commonwealth* v. *Smith*, *supra*. We conclude that, for the Commonwealth successfully to demonstrate a knowing and intelligent waiver by a juvenile, in most cases it should show that a parent or an interested adult was present, understood the warnings, and had the opportunity to explain his rights to the juvenile so that the juvenile understands the significance of waiver of these rights. For the purpose of obtaining the waiver, in the case of juveniles who are under the age of fourteen, we conclude that no waiver can be effective without this added protection. This procedure reflects our assumption that an informed parent, or person standing in loco parentis, will be better able to understand the child's rights, rights which a child of such tender years is unlikely to comprehend fully without the assistance of such a person. For cases involving a juvenile who has reached

the age of fourteen, there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney [or at least an opportunity for such consultation — see *Commonwealth* v. *MacNeill*, 399 Mass. 71, 78 (1987)] to ensure that the waiver is knowing and intelligent. For a waiver to be valid without such a consultation [or opportunity] the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile." (Citations omitted.) (Footnote omitted.)

Our traditional policy of affording minors "a unique and protected status," *id.* at 132, and the special caution in evaluating a juvenile's purported waiver of Miranda rights which flows from that tradition surely demand that the courts not accept as a qualified "advisor" one who, by reason of her own legally presumed lack of maturity, is herself entitled to the law's special protection. Leya-Anne Guyton, being less than eighteen years old when she consented to the police interrogation of the sixteen year old defendant, was a minor. See G. L. c. 4, § 7 (1988 ed.). A minor cannot satisfy the "interested adult" requirement articulated in *Commonwealth* v. *A Juvenile*, *supra*.[1]

Since the defendant did not have an opportunity to consult with an "interested adult," we must consider whether nevertheless he effectively waived his Miranda rights. In the case of a juvenile who is at least fourteen, a waiver may "be valid without [an opportunity for] consultation [if] the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile." *Com-*

[1] When Leya-Anne Guyton consented to interrogation of the defendant, she was thirteen days less than eighteen years old. We need not decide whether, had she been eighteen, the judge would have been warranted in concluding that Leya-Anne, who had been educated through the tenth grade, qualified as an interested adult. In keeping with the spirit of *Commonwealth* v. *A Juvenile*, *supra*, however, we have serious reservations about whether the evidence presented at the suppression hearing, including Leya-Anne's testimony that she "understood" the Miranda warnings, was enough to demonstrate that Leya-Anne's understanding was adequate to qualify her to advise the defendant about so crucial a question as whether he should relinquish his constitutional rights to remain silent and have counsel.

monwealth v. A Juvenile, supra at 134. The judge's finding that, prior to March 3, 1985, the defendant had had "extensive contact with the police and juvenile authorities and was well aware of his Miranda rights," even if it were warranted by the evidence at the suppression hearing, does not satisfy that test. Extensive contact with the police and other authorities by itself does not demonstrate unusual sophistication or knowledge about the Miranda rights. Furthermore, in our view, the evidence in this case did not warrant the judge's finding of such "extensive contact." According to the evidence, the defendant, who had stopped attending school after the eighth grade and worked on a "cleaning crew" cleaning factories, responded to a detective's question about whether he understood his rights by saying, "[Y]es, I've heard it before." However, there is no evidence in the record to indicate that the defendant had "heard" the Miranda warnings in connection with any police or juvenile proceedings. The only other evidence on that point was the defendant's testimony that he had heard Miranda warnings "[o]n T.V. . . . nobody ever read anything like that to me before." The Commonwealth argues that, by the time the defendant's statement was taken at the police station, "he had heard the Miranda warnings at least three times." Since all three of those times were in connection with the March 3, 1985, incident, however, they clearly shed no light on the defendant's sophistication at the critical time.

The present case is unlike Commonwealth v. King, 17 Mass. App. Ct. 602, 603, 610-611 (1984), in which a sixteen year old defendant was held capable of waiving his Miranda rights despite the unavailability of an interested adult. The defendant in that case had been involved with the court system since the age of eleven and one-half years, and had, two weeks prior to the arrest in question, exercised his right to consult with counsel and, after consultation, had remained silent. Instead, the evidence here, particularly that the defendant retrieved the victim's money and delivered it to the police officers in response to the detective's assurance to the defendant that it would help him "a great deal" to do so, strongly supports the inference that the defendant lacked experience and sophistica-

tion. We conclude that the denial of the defendant's motion to suppress was harmful error requiring reversal and a new trial.

We briefly address one evidentiary question which may arise again on retrial. The defendant argues that the judge erred in allowing a witness to testify that, before March 3, 1985, the defendant in three conversations had told him that a man named Angel Ventura knew someone with a large sum of money, that Ventura was "staking it out," that Ventura wanted the defendant to help him confiscate the money from this person's apartment, and that the intended victim "didn't believe in banks." The defendant argues that this was not relevant evidence, and that, even if it was relevant, the unfair prejudice of admitting it outweighed its probative value. The judge correctly admitted the testimony. The evidence was highly probative.

The judgments are reversed, and the verdicts are set aside. The case is remanded to the Superior Court for a new trial.

*So ordered.*

NOLAN, J. (dissenting). The court's result flies in the face of settled law, and, accordingly, I dissent.

We accept a judge's subsidiary findings unless there is clear error. *Commonwealth* v. *MacNeill*, 399 Mass. 71, 76 (1987). We give substantial deference to the judge's ultimate findings. *Id.*

The judge's finding that Leya-Anne could fulfil the role of an "interested adult" is not clearly erroneous. She was thirteen days away from her eighteenth birthday and was acting in loco parentis for the defendant and two younger siblings. She was a mother herself. The defendant testified that he took to mind what his sister told him. Further, the judge had an opportunity to witness her demeanor and her maturity at trial which, despite the time lapse, permitted the judge to assess her character. Although she did not go to the police station with the defendant, Leya-Anne was present in the apartment when the police first interrogated her brother about the money and was available over the telephone before he was questioned at the police

station. The defendant chose not to consult with his sister about the decision to waive his rights, but he had the opportunity to do so and this is all that is necessary. *Commonwealth* v. *Mac-Neill, supra* at 78.

We have often stated that we evaluate the totality of the circumstances when considering the effectiveness of a Miranda waiver. *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986). Taking the circumstances as a whole, the judge's denial of the motion to suppress is warranted in this case. This defendant was a "mature juvenile" at the time of the arrest. He was nearly seventeen years old; he was working; he had prior experience with the criminal justice system. There was no evidence that he was intoxicated or mentally ill. There was no improper police inducement to confess. While the police might have tried harder to reach the defendant's father in Boston, the finding that Leya-Anne served as an interested adult is not clearly in error.