COMMONWEALTH *vs.* MARK M., a juvenile.

No. 02-P-559.

Plymouth. March 20, 2003. - August 27, 2003.

Present: DOERFER, McHUGH, & MILLS, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights by juvenile, Self-incrimination. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Waiver.

A Juvenile Court judge erred in allowing a juvenile defendant's motion to suppress inculpatory statements the juvenile made after he submitted, with the consent of his grandmother and legal guardian, but without any consultation between the two (both of whom read and signed a written set of Miranda warnings), to a police detective's interrogation on allegations of an indecent touching, absent any findings regarding whether the juvenile's initial statement in his grandmother's presence was incriminating, and, if so, whether the second statement, made after his grandmother left the room, was insulated from the initial illegality; whether the grandmother and juvenile understood the content of the Miranda warnings; whether the grandmother understood her role as the potential source of advice for the juvenile concerning discussions with the police; and whether the juvenile's waiver of his Miranda rights was knowing, voluntary, and intelligent. [90-93]

COMPLAINTS received and sworn to in the Brockton Division of the Juvenile Court Department on February 8, 2001.

A pretrial motion to suppress evidence was heard by *Carol Gibson Smith,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Frederick M. McDermott, III,* for the defendant.

MILLS, J. The Commonwealth appeals from the order of a

judge of the Brockton Juvenile Court allowing the juvenile defendant's motion to suppress inculpatory statements.[1] A delinquency complaint had issued charging him with indecent assault and battery on a child under fourteen years of age (G. L. c. 265, § 13B) and accosting or annoying a person of the opposite sex (G. L. c. 272, § 53). We vacate the order and remand for further findings.

1. *Background.* According to a factual summary in the judge's memorandum of decision, the thirteen year old juvenile, accompanied by his grandmother (who was also his legal guardian), went to the East Bridgewater police department for an interview by Detective Scott C. Allen. The meeting had been scheduled by telephone several days prior to the visit. Allen met the juvenile and grandmother in his office, informed them that he was conducting a criminal investigation, and recited rights warnings to them under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). He then provided a written set of the Miranda warnings, which the juvenile and grandmother each read and signed. After they acknowledged that they understood the Miranda rights, the juvenile, with his grandmother's consent, but without any consultation between the two, agreed to speak with Allen, and throughout the initial interview, the juvenile was calm and cooperative.

Allen told the juvenile of allegations made against him that he had indecently touched a young girl while they were watching television at her grandmother's home. The juvenile stated that he had not acted inappropriately, that they had been watching television when a commercial for a "Playboy" video came onto the screen, and that he then changed the channel so that the girl would not see the commercial.

After the juvenile mentioned the video in his version of the events, the grandmother asked him if he would be more comfortable speaking with the detective alone. The juvenile responded affirmatively. Allen then left them in the room and went to confer with his superior regarding the appropriateness

[1]The judge's July 2, 2001, order was stayed to allow the Commonwealth to file an appeal and, on December 18, 2001, a single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory appeal and referred that appeal to this court.

of the request. After receiving affirmation from his superior, Allen escorted the grandmother to a conference room. She was aware that Allen was going to continue questioning the juvenile about the allegations.

Allen returned to his office and renewed the questioning (second interview), whereupon the juvenile made incriminating statements, the subject of the suppression motion. In his motion the juvenile alleged, inter alia, that the statements were not voluntary.[2] In granting the motion, the judge reasoned that the juvenile did not have the opportunity to consult with his grandmother, that the questioning began immediately after he was given Miranda warnings, and that there was no evidence that Allen advised the two that they had the right to consult before waiver of the juvenile's constitutional rights. The first reason is not supported by the judge's limited subsidiary findings, and such advice of right to consult is not required. The matter requires further analysis and findings.

2. *Governing principles.* The constitutional right against self-incrimination is fully applicable to cases involving juveniles. See *In re Gault,* 387 U.S. 1, 55 (1967). The Commonwealth bears the burden of proving beyond a reasonable doubt that, in the totality of the circumstances, a defendant's rights under the Fifth Amendment to the United States Constitution were waived voluntarily, knowingly, and intelligently. See *Commonwealth* v. *Jackson,* 432 Mass. 82, 85 (2000). "A statement is voluntary if it is 'the product of a rational intellect and a free will.' " *Ibid.,*

---

[2]In his motion, the juvenile alleged, inter alia, that he was "not afforded a meaningful opportunity to consult with . . . [an] interested adult while speaking to the police," that he "did not knowingly and intelligently waive his Miranda Rights before speaking with the police," that his grandmother "left the interview as he agreed to speak to the police officer" (and, thus, he "was not afforded the ability to have an interested adult present"), and that his "statements . . . were not voluntary."

The motion was accompanied by only the grandmother's affidavit, in which she stated (as is relevant to the motion) that she left the interview room with no other adult present. The motion was subject to the requirement that it be supported by an affidavit detailing all facts relied upon. Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). The affidavit was insufficient, but the insufficiency was not raised by the prosecutor or the judge, who proceeded to hearing and order. We note that such insufficiency contributes to the already difficult task facing judges in these matters and in this case specifically contributed to the need for remand and further hearing.

quoting from *Commonwealth* v. *Davis*, 403 Mass. 575, 581 (1988). "Although the validity of a defendant's Miranda waiver and the voluntariness of his statements are separate inquiries, we use a totality of the circumstances test for both." *Commonwealth* v. *Jones*, 439 Mass. 249, 257 (2003).[3]

A statement made following a violation of a suspect's Miranda rights is presumptively tainted. See *Commonwealth* v. *Smith*, 412 Mass. 823, 836 (1992).[4] The Commonwealth can overcome the presumption of taint by showing that either: "(1) after the illegally obtained statement, there was a break in the stream of events that sufficiently insulated the post-Miranda statement from the tainted one; or (2) the illegally obtained statement did not incriminate the defendant, or, as it is more colloquially put, the cat was not out of the bag." *Commonwealth* v. *Torres*, 424 Mass. 792, 799 (1997), quoting from *Commonwealth* v. *Prater*, 420 Mass. 569, 580 (1995). The juvenile under fourteen, in Massachusetts, is entitled to additional protection, and, correlatively, the Commonwealth has an additional burden.

"[W]here the defendant is a juvenile, courts must proceed with 'special caution' when reviewing purported waivers of constitutional rights." *Commonwealth* v. *Berry*, 410 Mass. 31, 34 (1991), citing *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 132-133 (1983), and *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972). And, for the Commonwealth successfully to demonstrate a knowing and intelligent waiver by a juvenile who is under the age of fourteen, it must show that a parent or other interested adult was present, understood the warnings, and had

---

[3] "Relevant factors to consider include, but are not limited to, 'promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence, and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or police), and the details of the interrogation, including the recitation of Miranda warnings.' " *Commonwealth* v. *Jackson*, 432 Mass. at 86, quoting from *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

[4] In some circumstances, absent a significant break in the stream of events, suppression of a post-Miranda statement may be required even where the suspect made no incriminating statement during the course of the illegal initial interrogation. See *Commonwealth* v. *Smith*, 412 Mass. at 833 n.9. See also *Westover* v. *United States*, 384 U.S. 436, 494-497 (1966).

the opportunity to explain the juvenile's rights to him so that the juvenile understood the significance of waiver of those rights. See *Commonwealth* v. *A Juvenile, supra* at 134.

The Commonwealth need not prove "that the juvenile, and the adult assisting him, made full use of the opportunity provided to them actually to discuss the juvenile's rights and the possible consequences of a waiver." *Commonwealth* v. *Philip S.,* 414 Mass. 804, 811 (1993). "*[A]ctual opportunity* to discuss [the juvenile's] rights" is required (emphasis supplied).[5] *Ibid.*

3. *Discussion.* The judge ultimately found that the juvenile did not have "an opportunity to consult with his grandmother" because (1) police questioning began immediately after he received a Miranda warning, and (2) neither before nor after administering that warning did the interrogating detective inform the grandmother and the juvenile that they had a right to consult in deciding whether or not to talk to him. Without such knowledge, the judge concluded, there could be no "meaningful opportunity for consultation," notwithstanding the fact that the grandmother and juvenile had been left alone for a period of time.

a. *Opportunity to consult.* We disagree that the subsidiary findings of fact support the judge's ultimate finding that the

[5]We note three comments (two in footnotes) which, while dicta, create ambiguity: "Juveniles under age fourteen must actually consult with an interested adult before a valid waiver of rights can occur." *Commonwealth* v. *Berry,* 410 Mass. at 35 n.2, citing *Commonwealth* v. *A Juvenile,* 389 Mass. at 134; "Juveniles under the age of fourteen, however, must actually consult with an interested adult in order for their Miranda waiver to be valid." *Commonwealth* v. *McCra,* 427 Mass. 564, 568 n.2 (1998), citing *Commonwealth* v. *A Juvenile, supra*; and "Juveniles . . ., under age fourteen, must actually consult with the interested adult before a valid waiver of rights can occur." *Commonwealth* v. *Leon L.,* 52 Mass. App. Ct. 823, 826 (2001), citing *Commonwealth* v. *McCra, supra.* Despite the conflict between the explicit language of these dicta comments and the holding in *Commonwealth* v. *Philip S.,* 414 Mass. at 811, we conclude that the express holding of *Philip S.* controls in this case, and that the Commonwealth was not required to prove that consultation actually occurred when the grandmother and the juvenile were left alone in the room while Allen conferred with his superior officer. The above comments in *Berry, McCra,* and *Leon L.* all directly or indirectly relied upon *Commonwealth* v. *A Juvenile,* and the holding in *Philip S.* explicitly was to the effect that actual opportunity for consultation, rather than actual consultation, fulfilled the requirements of *Commonwealth* v. *A Juvenile.* See *Commonwealth* v. *Philip S., supra.*

juvenile at no time had a meaningful opportunity to consult. While it was improper that the initial interview commenced without an opportunity to consult, the judge made no findings as to whether (1) the juvenile made incriminating statements during that initial interview, and (2) there was a break in the chain of events sufficient to insulate the second interview admissions (made after he was left alone with his grandmother) from the earlier statement. By analogy to the rule in *Commonwealth v. Smith*, 412 Mass. at 836, the juvenile's second interview statements were presumptively tainted.[6] Nevertheless, the Commonwealth is entitled to a finding on whether there was a sufficient break in the stream of events to insulate the second admission from the initial illegality and on whether the first statement was incriminating.

b. *The right to consult.* Secondly, the judge appears to have ruled (1) that the police were required to inform "the [j]uvenile and [his grandmother] that they had a right to consult prior to waiving any of the [j]uvenile's constitutional rights," and (2) that it was necessary for the grandmother and juvenile to know of the right to consult in order for there to be a meaningful opportunity to consult.

There is no requirement that the police inform of the right to consult. We recognize that the Supreme Judicial Court has suggested that the better practice "with any juvenile is for the investigating officials explicitly to inform the juvenile's parent, or other interested adult, that an opportunity is being furnished for the two to confer about the juvenile's rights," *Commonwealth* v. *Philip S., supra* at 811 n.5, before questioning begins. However, no Massachusetts opinion has held that articulation by the investigating officials of the juvenile's right to consult is mandatory in order to satisfy the requirement set out in *Philip S.* that an "actual opportunity" for consultation be provided. The Supreme Judicial Court has expressly declined to establish such a rule, and we decline to do so now. See *ibid.*

---

[6]In our analysis of this case, by analogy to the "presumptive taint" rule of the Miranda cases, we hold that when interrogation of a juvenile takes place without an "actual opportunity" for the juvenile to consult, a subsequent statement is presumptively tainted. The Commonwealth can overcome the presumption of taint in the same way as in the case of an initial Miranda violation.

See also *Commonwealth* v. *Alfonso A.,* 438 Mass. 372, 381 (2003). In eschewing the articulation rule, however, the Supreme Judicial Court in *Philip S.* pointed out that in the specific circumstances of the case, it was clear to the juvenile's mother that "she and her son should use the private consultation to discuss the best course to follow, in light of the information they had just received." *Commonwealth* v. *Philip S., supra.* We think that, therefore, in order for there to be an "actual opportunity" to consult, the interested adult must at least understand that there is an opportunity to consult and his or her own role in that consultation. A judge considering a motion to suppress in this area should make findings on this subject accordingly.

c. *Further findings.* Concluding that the judge's subsidiary findings did not provide adequate support for her ultimate finding that the juvenile did not have a "meaningful opportunity" for consultation with the grandmother does not, for two reasons, end the analysis. First, decided cases require that the adult understand the Miranda warning's content. See *Commonwealth* v. *A Juvenile,* 389 Mass. at 134; *Commonwealth* v. *Alfonso A., supra* at 380. Satisfaction of that requirement is truly necessary if the juvenile's opportunity for consultation is to be more than a formalistic exercise. The judge made no finding on the grandmother's understanding of the juvenile's rights under the Miranda warning. Such a finding is essential.

Second, and perhaps more important, the opportunity for consultation is designed to ensure that, before talking to police, "the juvenile has understood his rights and the potential consequences of waiving them." *Commonwealth* v. *Alfonso A., supra* at 381, quoting from *Commonwealth* v. *MacNeill,* 399 Mass. 71, 79 (1987). Therefore, even if the Commonwealth demonstrates that the grandmother understood the rights embodied in the Miranda warning, and that her role as an "interested adult" was to provide advice to the juvenile about whether he should waive those rights, the Commonwealth still would be required to demonstrate, beyond a reasonable doubt, that the juvenile's resulting waiver was voluntary. To be sure, demonstrating the grandmother's knowledge, her understanding of her role, and that the juvenile was afforded an opportunity

for consultation are important components of any finding of competent waiver. Findings on these matters are essential, and because of the view she took of the case, the judge never made them.

We therefore vacate the order allowing the motion to suppress and we remand the case for further findings as to whether (1) the juvenile's initial statement was incriminating, and, if so, whether there was a sufficient break in the stream of events to insulate the second statement from the initial illegality; (2) the grandmother and juvenile understood the content of the Miranda warnings; (3) the grandmother understood her role as the potential source of advice for the juvenile on whether he should waive his rights and talk to the police; and (4) the juvenile's waiver of his Miranda rights was knowing, voluntary, and intelligent.

*So ordered.*