NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11624


COMMONWEALTH  vs.  RASHIDI J. SMITH.



Plymouth.     December 4, 2014. - April 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.




Homicide.  Constitutional Law, Waiver of constitutional rights
    by juvenile, Admissions and confessions.  Evidence,
    Admissions and confessions.  Practice, Criminal, Admissions
    and confessions.  Supreme Judicial Court, Superintendence
    of inferior courts.




Indictment found and returned in the Superior Court
Department on August 17, 2007.

A pretrial motion to suppress evidence was heard by Jeffrey
A. Locke, J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Chauncey B. Wood for the defendant.
Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
Rebecca Rose, for Committee for Public Counsel Services &
others, amici curiae, submitted a brief.

LENK, J. The defendant appeals from his conviction of murder in the second degree in the death by shooting of fourteen year old Marvin Constant. At the time of his arrest for the shooting, the defendant was seventeen years and five months old. The Commonwealth's evidence at trial included, among other things, incriminating statements that the defendant made to police after waiving his Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966). The defendant sought, unsuccessfully, to suppress these statements. He argues on appeal that their introduction at trial was error given our common-law rule that, ordinarily, a juvenile must be afforded a meaningful opportunity to consult with an "interested adult" before waiving his or her Miranda rights, since he did not have such an opportunity.

The interested adult rule, as we have defined it to date, applies only to those who have not yet reached the age of seventeen. Several years after the defendant was convicted, however, the Legislature enacted St. 2013, c. 84 (2013 act), which amended an array of statutory provisions to treat seventeen year olds as juveniles.

The 2013 act does not affect the current case, both because it is prospective in its application and because it does not itself modify the interested adult rule, which is a creature of our common law. We therefore affirm the defendant's conviction.

Nevertheless, we take this opportunity to expand the reach of our rule to encompass seventeen year olds, but do so on a prospective basis.[1]

1. Background. a. The crime. The facts that could have been found by the jury include the following. In June, 2007, members of two gangs were present at a cookout at a home on Crescent Street in Brockton. The defendant was associated with one of the two gangs. A fight broke out at the cookout, and a window was broken.

The next day, the defendant arrived at the Crescent Street home, wearing a red sweatshirt with black sleeves. The defendant spoke to a member of the gang with which he was associated, saying that the events of the previous night had been "messed up." The defendant then had a conversation with the victim, who belonged to the other gang.

The defendant and the victim left the house together. A few minutes later, witnesses heard three gunshots. A witness saw the victim lying in the street and a person wearing a red sweatshirt ride off on a bicycle. An autopsy revealed that the victim had been killed by two gunshot wounds.

---

[1] We acknowledge the amicus brief of the Committee for Public Counsel Services, the American Civil Liberties Union Foundation of Massachusetts, the Massachusetts Society for the Prevention of Cruelty to Children, and Citizens for Juvenile Justice.

By happenstance, police officers were, at that time, driving an unmarked sport utility vehicle (SUV) in the area. They saw the defendant drop a bicycle to the ground, run, and hurriedly flag down and enter a passing green Honda automobile. Before getting into the vehicle, the defendant was seen clutching his waistband area in a manner that suggested to the officers that he might be concealing a weapon there. After briefly following the Honda, the detectives stopped it. They found a gun on the floor of the Honda where the defendant had been sitting. The gun's ten-bullet magazine had seven bullets in it, and the gun was jammed; that type of jam could have occurred only if the gun had been fired. Ballistics testing subsequently indicated that the gun had been used to shoot three cartridge casings and one spent projectile that were recovered in the vicinity of the victim's body.

b. Statements to police.[2] The defendant, then seventeen years and five months old, was arrested and taken to the Brockton police station. The defendant previously had been involved in several delinquency cases, and had been charged with firearm-related offenses that ultimately were dismissed. Police booked the defendant and informed him of his Miranda rights. They then provided the defendant with a Miranda waiver form and

---

[2] The facts in this section, which are not in dispute, are drawn primarily from the written decision of the Superior Court judge denying the defendant's motion to suppress.

asked him to read the form aloud. When the defendant had difficulty doing so, a detective read the form to the defendant, pausing to ask after each line whether the defendant understood. The defendant initialed each of the rights on the form as well as the word "YES" at the bottom of the form. He also agreed orally to waive his rights and to tell his side of the story.

During the first hour of questioning, the defendant maintained that he had not been present when the victim was shot, and that he had gotten into the green Honda only to "hang out" with a friend who was in the vehicle. When police officers told the defendant that they knew he had been at the scene and believed that he had been the shooter, the defendant said that he had nothing to add, and the interview was terminated.

On the way back to the holding cell, the defendant asked the detectives why they did not believe him. One of the detectives said, "I saw you." The defendant asked, "You were in the SUV?" When the officer answered affirmatively, the defendant requested that the interview resume. He then told police that he had been present when the victim was shot, and that a man named "Triz" had been the shooter.

c. Proceedings. The defendant was charged with murder. Before trial, he moved to suppress his statements to police. The defendant argued, among other things, that his Miranda waiver had not been valid because he had not had a meaningful

opportunity to consult with an interested adult.  After an evidentiary hearing, a Superior Court judge denied the motion to suppress in a detailed written decision.  The judge determined that the interested adult rule was not applicable because although, at seventeen years of age, the defendant was a "minor," he was not a "juvenile" subject to that rule.  Based on the evidence presented, including a recording of the interviews with the defendant, the judge found that "the circumstances surrounding the defendant's waiver of rights show[], beyond a reasonable doubt[,] that it was voluntarily and intelligently made."

At trial, the defendant testified that a friend, Terrence Young, had been the shooter.  Young had died by the time of the trial.  The defendant stated that he had made up the name "Triz" when he spoke to police in order to protect Young.  The jury convicted the defendant of murder in the second degree, and the Appeals Court affirmed. Commonwealth v. Smith, 84 Mass. App. Ct. 1116 (2013).  We granted the defendant's application for further appellate review, limited to the issue of the application of the interested adult rule.

2.  Discussion. a.  Legal framework.  The Commonwealth is subject to "a heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination." Commonwealth v. Berry, 410 Mass. 31, 34 (1991),

quoting Commonwealth v. Guyton, 405 Mass. 497, 500 (1989). This burden grows heavier still when the defendant is a juvenile, because studies have shown that "most juveniles do not understand the significance and protective function of the[ir] rights even when they are read the standard Miranda warnings." Commonwealth v. A Juvenile, 389 Mass. 128, 131 (1983) (A Juvenile). "Special caution" therefore must be exercised when police present juveniles with the option of waiving their Miranda rights, see Commonwealth v. Berry, supra at 34, in order "to ensure that the juvenile defendant has understood his rights and the consequences of waiving them." Commonwealth v. McCra, 427 Mass. 564, 568 (1998) (citations omitted).

In A Juvenile, supra at 134, and subsequent cases, we sought to give shape to the caution appropriate in such circumstances by establishing the following rules. First, "in the case of juveniles who are under the age of fourteen . . . no waiver can be effective" unless "a parent or an interested adult was present, understood the warnings, and had the opportunity to explain [the] rights to the juvenile." Id. Next, juveniles between fourteen and seventeen years old must be "afforded the opportunity to consult with an interested adult." See Commonwealth v. Berry, 410 Mass. at 35, citing Commonwealth v. Guyton, supra at 500-502, and Commonwealth v. MacNeill, 399 Mass. 71, 78 (1987). Even if this opportunity is not given, a

Miranda waiver made by a juvenile of fourteen to seventeen may be valid if "the circumstances . . . demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile."  A Juvenile, supra.

The interested adult rule provides "additional protection[] under the common law . . . that go[es] beyond what the Supreme Court would require in similar circumstances."  See Commonwealth v. Simon, 456 Mass. 280, 303, cert. denied, 562 U.S. 874 (2010), quoting Commonwealth v. Snyder, 413 Mass. 521, 531 (1992).  This rule is essentially a prophylactic device, which seeks to "establish[] . . . definite procedures" that "inform[] police and prosecutors with specificity as to what they may do in conducting custodial interrogation" and "inform[] courts under what circumstances statements obtained during such interrogation are not admissible."  Commonwealth v. Philip S., 414 Mass. 804, 812-813 (1993), quoting A Juvenile, 389 Mass. at 135.

b.  Analysis.  As noted, the defendant in this case was several months older than seventeen when he was interviewed by police.  We have stated repeatedly that a "defendant [is] no longer entitled to interested adult protections at age seventeen."  See Commonwealth v. Ray, 467 Mass. 115, 132 (2014), citing Commonwealth v. Trombley, 72 Mass. App. Ct. 183, 186 (2008).  See also Commonwealth v. Robinson, 449 Mass. 1, 4 n.6 (2007); Commonwealth v. Considine, 448 Mass. 295, 297 n.7

(2007); Commonwealth v. Mavredakis, 430 Mass. 848, 855 n.12 (2000); Commonwealth v. Carey, 407 Mass. 528, 537 (1990). The defendant's contention that his statements to police should have been suppressed under the interested adult rule is therefore unavailing. The motion judge correctly determined that the rule did not apply. There was also no error in the judge's determination that, given the circumstances surrounding the defendant's waiver of his Miranda rights, the waiver was voluntary and intelligent beyond a reasonable doubt.

The defendant argues that the passage of the 2013 act entitles him to the protection of the interested adult rule. As mentioned, this statute expands the definition of the term "juvenile," in various contexts, to include seventeen year olds. The defendant's argument fails for two reasons.

First, the 2013 act, which became law on September 18, 2013, states that it "shall take effect upon its passage." St. 2013, c. 84, § 34. In Watts v. Commonwealth, 468 Mass. 49 (2014), we considered whether the 2013 act applies retroactively to cases pending when the act took effect. We noted there, among other things, that "[r]etroactive application of the act . . . would present potential legal and appellate issues concerning the effect of proceedings that had already taken place," including challenges to "the admissibility of statements made by a juvenile who was seventeen years of age to

police . . . if the juvenile did not have the opportunity to consult with a parent, interested adult, or attorney." Id. at 59, citing A Juvenile, 389 Mass. at 134. Our analysis of the 2013 act's history, substance, and underlying purpose led us to conclude that the act applies prospectively only. The defendant was interviewed by police more than six years prior to the effective date of the 2013 act, and his motion to suppress was denied more than three years before that date. The propriety of the defendant's Miranda waiver and the admissibility of his statements are not, therefore, affected by the passage of the 2013 act.

Moreover, the 2013 act does not itself modify the scope of the interested adult rule. The interested adult rule is a rule of our common law, not one constitutionally mandated or legislatively enacted. See Commonwealth v. Simon, 456 Mass. at 303. The various statutory provisions addressed by the 2013 act do not expressly or implicitly concern the interested adult rule. Consequently, the 2013 act would not have entitled the defendant to the protection of the interested adult rule even had it taken effect before the defendant was interviewed by police.

c. Future cases. While the 2013 act does not, itself, modify the interested adult rule, we take this opportunity to extend the rule, on a prospective basis, to seventeen year old

defendants.  Like the interested adult rule itself, this modification is not constitutionally or statutorily required. Nevertheless, in the wake of the 2013 act, seventeen year olds will be treated as juveniles in a myriad of contexts.  See, e.g., St. 2013, c. 84, § 1, amending G. L. c. 6, § 167 (criminal record information); St. 2013, c. 84, §§ 7-27, amending sections of G. L. c. 119 (proceedings against delinquent children); St. 2013, c. 84, § 30A, amending G. L. c. 276, § 87 (placement in custody of probation officer); St. 2013, c. 84, § 31, amending G. L. c. 276, § 89A (appointment of counsellors to juvenile offenders); St. 2013, c. 84, § 33, amending G. L. c. 280, § 6B (imposition of criminal assessments). Considerations of consistency and ease of application thus support the extension of our rule, too, to seventeen year olds.

Because our modification of the scope of the interested adult rule is "not a new constitutional rule, but rather an exercise of our power of superintendence 'to regulate the presentation of evidence in court proceedings,'" it will apply only to interrogations conducted after the issuance of the rescript in this case.  See Commonwealth v. Woods, 466 Mass. 707, 720, cert. denied, 134 S. Ct. 2855 (2014), quoting Commonwealth v. Dagley, 442 Mass. 713, 720-721 (2004), cert. denied, 544 U.S. 930 (2005).  See also Commonwealth v. Clemente, 452 Mass. 295, 305 (2008), cert. denied, 555 U.S. 1181 (2009);

Commonwealth v. Pring-Wilson, 448 Mass. 718, 736 (2007), and

cases cited; E.B. Cypher, Criminal Practice and Procedure

§ 1:21, at 37 (4th ed. 2014).  Contrast Commonwealth v.

Figueroa, 413 Mass. 193, 201-202 (1992) (discussing retroactive

application of constitutionally required rule).[3]  Prospective

application is particularly appropriate in the current context,

given that the interested adult rule is specifically intended to

establish fixed procedures that may be relied upon by police and

by the courts.  See Commonwealth v. Philip S., 414 Mass. at 812-

813, quoting A Juvenile, 389 Mass. at 135.  This goal would be

---

[3] In Commonwealth v. Adjutant, 443 Mass. 649, 667 (2005), we
"for the first time [applied] a new rule of criminal law, not
constitutionally mandated, to the defendant before us, even
though we said in the decision that the new rule would apply
prospectively."  Commonwealth v. Pring-Wilson, 448 Mass. 718,
736 (2007).  This was a "most unusual" exception "to our normal
practice of prospective application."  See Commonwealth v.
Clemente, 452 Mass. 295, 305 (2008), cert. denied, 555 U.S. 1181
(2009).  We deemed that exception warranted because,
essentially, the doctrine that we updated in Commonwealth v.
Adjutant had been "paramount" in that case, and had resulted in
exclusion of evidence that, "[g]iven [its] probative value . . .
may have been enough to create reasonable doubt of the
defendant's guilt."  See Commonwealth v. Pring-Wilson, supra at
736, quoting Commonwealth v. Adjutant, supra at 666.  See also
Commonwealth v. Russell, 470 Mass. 464, 479 (2015) (declining to
apply new rule to defendant where we were "not concerned that in
the absence of the new rule there may have been a miscarriage of
justice"); Commonwealth v. Crayton, 470 Mass. 228, 252-253
(2014) (explaining that the Adjutant rule was subsequently
applied in Commonwealth v. Pring-Wilson because, in the
circumstances, the "integrity of [the] verdict was suspect").
Given the circumstances surrounding the defendant's statements
to police, as well as the limited role that those statements
played at his trial, we are satisfied that our normal practice
of prospective application works no injustice here.

unnecessarily compromised by the application of our revised interested adult rule to the defendant or to others similarly situated after the fact.  See Commonwealth v. Watts, 468 Mass. at 59.

Judgment affirmed.