COMMONWEALTH *vs.* STEVEN WARD.

Middlesex. February 6, 1992. - April 8, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Waiver of constitutional rights, Admissions and confessions, Parent and child. *Evidence*, Admissions and confessions. *Waiver. Insanity. Practice, Criminal*, Instructions to jury, Capital case. *Homicide*.

The record of the hearing on a criminal defendant's motion to suppress statements to police, made when he was a juvenile, demonstrated that, before the defendant waived his Miranda rights, he was afforded an opportunity for meaningful consultation with an interested adult, where the police had advised the defendant and his mother of their right to confer and the mother and son indicated that no consultation was necessary. [396-397]

On appeal from the conviction of a defendant of murder in the first degree by reason of extreme atrocity or cruelty, there was no basis for this court to conclude that a charge to the jury on the consequences of a verdict of not guilty by reason of insanity, requested by defense counsel in a form somewhat different from that considered in *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975), created a substantial likelihood of a miscarriage of justice. [397-399]

On review of a first degree murder conviction pursuant to G. L. c. 278, § 33E, this court, after balancing the conflicting arguments concerning the defendant's youth and background and the brutal and vicious nature of the crime, and accepting the defendant's assertions of fact that were not conclusively established on the record, declined to reduce the verdict to murder in the second degree. [399-400]

INDICTMENT found and returned in the Superior Court Department on May 9, 1989.

The case was tried before *Robert W. Banks*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Kevin J. Mahoney*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. After this court upheld the transfer of the defendant from the juvenile to the adult system (*Ward v. Commonwealth*, 407 Mass. 434 [1990]), a jury convicted him of murder in the first degree by reason of extreme atrocity or cruelty. In this appeal, Ward challenges (1) the denial of his motion to suppress certain statements that he made to the police and (2) the judge's instruction concerning the consequences of a finding that the defendant was not guilty by reason of his lack of criminal responsibility. Ward also seeks relief under G. L. c. 278, § 33E (1990 ed.), asking us to reduce the verdict to murder in the second degree.

We need not set forth the circumstances of the victim's death, which appear in our earlier opinion (see *id.* at 435-436), in order to deal with the first two issues on appeal. We shall present certain facts when we discuss Ward's claim for relief under § 33E. We affirm the conviction and decline to reduce the verdict of murder in the first degree.

1. Ward argues that his motion to suppress statements that he made to the police should have been allowed because his interrogation by the police in the early hours of the day after the victim's death was not preceded by a knowing and intelligent waiver of his constitutional rights. Ward had attained the age of sixteen approximately two weeks before the victim's death.

Ward asserts that his statements should have been suppressed because he had no meaningful opportunity before waiving his Miranda rights to confer with his mother, who was present at the interrogation. See *Commonwealth v. A Juvenile*, 389 Mass. 128, 131 (1983). The police did not tell the defendant and his mother that they had the right to confer in private. The defendant cites authority in support of the right of a minor to have a private consultation with a parent before waiving Miranda rights. See *Hall v. State*, 264 Ind. 448, 452 (1976) ("a meaningful consultation can only occur in the absence of the neutralizing pressures which result from police presence"); *Commonwealth v. Roane*, 459 Pa.

389, 396 (1974) (police did not afford defendant's mother an opportunity to advise son privately about his constitutional rights); *In re E.T.C., Juvenile,* 141 Vt. 375, 379-380 (1982) (meaningful consultation can only occur in the absence of police presence).

The judge found that a police sergeant read Miranda warnings to Ward and his mother at the Lowell police station. Ward and his mother then read those rights, and each indicated that he or she understood them. Each signed a Miranda card. The defendant's mother said she thought the defendant understood his rights. The police asked the defendant's mother if she wanted to discuss the defendant's rights with her son. She looked at the defendant, and he indicated that it was "okay." After that, Ward gave two statements to the police while his mother was present. The second was substantially more incriminating than the first. The judge ruled that beyond a reasonable doubt the defendant knowingly, voluntarily, and intelligently waived his Miranda rights.

We adopt no fixed rule that a minor's opportunity to have a meaningful consultation with an interested adult (*Commonwealth* v. *A Juvenile, supra* at 134) requires that the police expressly inform the minor and the adult that they may confer in private. Surely, the police may not properly deny them that right. It was sufficient in this case, however, that the police advised them of the right to confer, and the mother and son decided that no consultation was necessary. For this reason, the authorities on which the defendant relies are not on point. *Bluitt* v. *State,* 269 Ind. 438, 443-444 (1978) (confession voluntary where neither minor nor father requested opportunity to speak privately). We would have a different case, of course, if the mother or the son had stated a desire to discuss the matter and the police had not allowed them to do so in private. Here, however, the defendant and his mother were offered the opportunity for a consultation (*Commonwealth* v. *Berry,* 410 Mass. 31, 35 [1991]), and they declined the offer.

2. The defendant challenges the judge's instruction regarding the consequences of a jury verdict of not guilty because

of a lack of criminal responsibility (in common parlance, by reason of insanity). His challenge is based solely on a claim that the charge created a substantial likelihood of a miscarriage of justice. Not only did the defendant not object to the charge, but he requested the very charge that the judge gave.[1]

The evidence raised the question whether the defendant was criminally responsible for his conduct. The judge described the standard that the jury should use for determining whether the Commonwealth had proved that the defendant was criminally responsible. The defendant was entitled, on request, to a further instruction concerning the consequences of a verdict of not guilty by reason of the defendant's insanity. *Commonwealth* v. *Mutina*, 366 Mass. 810, 816-817, 823 n.12 (1975). Such an instruction may be a mixed blessing for a defendant. *Id.* at 831-833 (Quirico, J., dissenting). The instruction requested here was not identical to that requested in the *Mutina* case, but it is substantively similar to that instruction. *Id.* at 811 n.1.[2] It appears to have none of

---

[1]The instruction given, and repeated later in substantially the same form following a request from the jury, is as follows: "Upon [a verdict of not guilty by reason of insanity], our statutes provide that the Court may order the defendant hospitalized in a secure facility for a forty-day period of observation and examination. During this time or within sixty days after the verdict, a petition may be filed with the Court by the District Attorney's Office, the superintendent of a mental health facility, or the medical director at Bridgewater seeking that the defendant be committed to a facility or to Bridgewater State Hospital. And upon a finding by the Court that the defendant is mentally ill and not a fit subject for commitment to a facility of the Department of Mental Health, and that the failure of the defendant to be retained in strict custody would result in serious harm, the Court shall order him committed to Bridgewater State Hospital for a period of six months. After the expiration of this six-month period, the defendant may be recommitted for additional one-year periods, and there is no limit to the number of such commitments as long as the condition remains." .

[2]The instruction requested in the *Mutina* case was as follows: "In the event that the defendant is found not guilty by reason of insanity, the district attorney or other appropriate authority may petition this Court under our statutes for his commitment to a facility for the care and treatment of mentally ill persons, or commitment to Bridgewater State Hospital for care and treatment. If upon such petition the Court finds that the defend-

the defects that the Appeals Court noted in the *Mutina* instruction given in *Commonwealth* v. *Loring*, 14 Mass. App. Ct. 655, 657-660 (1982).

We have no confidence that any particular charge on the consequences of a verdict of not guilty by reason of insanity will provide just the right information to the jury. We have left the subject of what, if any, instruction to request to the judgment of individual defendants. Defense counsel elected here to request a particular instruction, in a form somewhat different from that requested in the *Mutina* case. There is no claim that, in doing so, his conduct fell below the standard of an ordinary lawyer. Moreover, we see no basis for concluding that the requested charge created a substantial likelihood of a miscarriage of justice.

3. The defendant argues that his circumstances warrant a reduction in the verdict from murder in the first degree to murder in the second degree. He points to his young age; the inadequacy of his home life; the five years he spent in a foster· home where he was physically abused; evidence of his dyslexia and of an imbalance affecting his impulse control; his lack of special education; his alleged substance abuse since the age of thirteen; and the absence of any record of juvenile delinquency or history of violence. He also argues that, because the jury verdict was not based on deliberate premeditation, the jury must have concluded that he was impaired by a mental defect or substance abuse, or both. The defendant also relies on evidence, developed with respect to his earlier transfer hearing, that, during the brief time he had been held in the Department of Youth Services' treatment center, he had made progress and had shown true remorse in the view of some experts. He points to the fact that Michael Morrisette, an adult, was convicted by a different

ant is mentally ill at the present time, and that his discharge would create a likelihood of serious harm to himself or others, then the defendant would be committed to a facility, or to strict custody in Bridgewater State Hospital in appropriate cases. The order of commitment is thereafter periodically reviewed by the courts of the Commonwealth." *Commonwealth* v. *Mutina*, 366 Mass. 810, 811 n.1 (1975).

jury of only murder in the second degree in the victim's death.

Against the defendant's contentions, the Commonwealth argues that the murder was brutal and vicious; there was little credible evidence tending to show that the defendant was under the influence of alcohol or some other drug; the victim, a homeless man of seventy-four years of age, did not physically threaten the defendant; the defendant first kicked the victim, whom the defendant encountered in an alley, fracturing his skull and breaking his nose; the defendant then stabbed the helpless victim seven or eight times; the defendant left, returned with friends, and tried to set the moaning victim on fire; he left and again returned with others, took a kitchen knife from Morrisette, and again repeatedly stabbed the victim. The defendant washed his hands, went home, talked to his mother, telephoned his girl friend, and went to sleep.

Balancing the conflicting arguments, and accepting the defendant's assertions of fact that are not conclusively established on the record, we decline to reduce the verdict of murder in the first degree. This is not a case like *Commonwealth v. McDermott*, 393 Mass. 451, 460-461 (1984), on which the defendant relies. There, a young man, educationally deficient, with some drug problems, and without any criminal record, told of a killing following, and in fear of a repetition of, an anal rape. *Id.* at 461. The court gave consideration to the defendant's account because there was no third party witness to the encounter. Here, the victim did not threaten the defendant. The defendant twice returned to the defenseless victim, and in the final encounter, stabbed him brutally. The defendant's degree of culpability is measurably greater than that of Morrisette.

*Judgment affirmed.*