NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1821                                        Appeals Court

COMMONWEALTH vs. MICHAEL PACHECO.

No. 13-P-1821.

Bristol.      December 4, 2014. - April 17, 2015.

Present: Cohen, Fecteau, & Massing, JJ.


Constitutional Law, Waiver of constitutional rights by juvenile, Admissions and confessions. Practice, Criminal, Motion to suppress, Admissions and confessions, Waiver. Waiver.



Complaint received and sworn to in the Bristol County Division of the Juvenile Court Department on September 28, 2012.

Indictments found and returned in the Superior Court Department on November 1, 2012.

A pretrial motion to suppress evidence was heard by Lawrence Moniz, J., in the Bristol County Division of the Juvenile Court Department.

An application for leave to prosecute an interlocutory appeal was allowed by Barbara A. Lenk, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.


Tara L. Blackman, Assistant District Attorney, for the Commonwealth.
Joseph Maggiacomo, III, for the juvenile.

MASSING, J.  Following the execution of a search warrant, resulting in the discovery of a handgun and several bags of heroin in the defendant youthful offender's bedroom, the Taunton police arrested the juvenile and took him to the police station to question him about his suspected involvement in a shooting that took place on the railroad tracks near his home.  Because he was sixteen years old, the police arranged for the juvenile's guardian to be present during questioning.  A Juvenile Court judge found that the juvenile validly waived his Miranda rights at the outset of questioning, but that the police failed to honor his mid-interview request to consult with his guardian.  Accordingly, the judge denied the juvenile's motion to suppress statements made during the first part of the interview, but allowed the motion with respect to statements made after his request to consult.  We affirm.

Background.  The facts found by the judge at the hearing on the motion to suppress, as amplified by uncontested evidence presented at the hearing and by the contents of the videotaped interview,[1] are as follows.  On September 22, 2012, at

---

[1] "Where the judge's factual findings are based on a videotape of the defendant's interview, 'we . . . take an independent view of [statements made at the interview] and make judgments with respect to their contents without deference to the fact finder, who is in no better position to evaluate the[ir] content and significance.'"  Commonwealth v. Bermudez, 83 Mass. App. Ct. 46, 50 (2012), quoting from Commonwealth v. Novo, 442 Mass. 262, 266 (2004).

approximately 8:30 P.M., two Taunton police officers went to the apartment where the juvenile lived with his guardian, Crystal Courtney,[2] to execute a search warrant for a firearm as part of an investigation into a shooting.  After discovering a handgun and several glassine bags containing a substance that appeared to be heroin in the juvenile's bedroom, the officers arrested the juvenile and transported him to the police headquarters for questioning.  The police advised Ms. Courtney that she could accompany the juvenile, who was sixteen years, ten months old at the time, to the station to act as an interested adult and brought her to the police station shortly after the juvenile's arrival.

At approximately 11:06 P.M., Detective Lynne Pina commenced a videorecorded interrogation of the juvenile in a small interview room at the station, assisted by Brian Dunham, another officer from the department.  Pina gave the juvenile and Ms. Courtney a notification of rights form, read them the Miranda rights from the form, and gave them an opportunity to read it themselves.  Neither Pina nor Dunham left the room.  Without requesting an opportunity to speak to each other in private, the juvenile and his guardian signed the rights form.

_____

[2] The record does not disclose Ms. Courtney's age or relationship with the juvenile, other than that they lived together and that she was his guardian.  The juvenile does not assert that she was unqualified or incompetent to act as an interested adult on his behalf.

Pina began the interview by questioning the juvenile about the night of the shooting.  He initially denied any involvement. At approximately 11:31 P.M., another officer interrupted the interrogation to say that the video equipment was not recording. Pina and Dunham left the interview room to address the problem. When they returned approximately four minutes later, Pina told the juvenile, "We will pick up where we left off; you have been given rights and signed forms," and resumed the interrogation.

The juvenile continued to deny his involvement in the shooting.  Pina and Dunham then told the juvenile that they had evidence he possessed the gun even before the shooting took place, and that a dog had traced a scent from the railroad tracks where the shooting occurred to his back door.  Moreover, they had spoken with the victim, who gave them "very good descriptions" and said "he'd probably be able to identify the people who shot him."  The police urged the juvenile to tell them the truth, saying he had an opportunity to "help [him]self."  Pina continued, "There was somebody with you.  Who was with you?," adding that "this is going to go a long way to help you in the court system, the [district attorney] will look at you favorably, if you start cooperating with the case and the investigation."  Referring to Ms. Courtney, Pina asked, "Do you want to talk to her about it?  Do you want to ask her what you should do?"

The officers continued to try to convince the juvenile to cooperate, saying, "You should be helping yourself right now." When the juvenile repeated, "I didn't shoot the guy," Pina asked, "So who did? Tell us what happened." The juvenile then asked, "Can I have a few minutes first?" Dunham said, "Sure, absolutely. You want to talk to Crystal?" The juvenile replied, "I just want to make sure, you know what I'm saying?"

Before the officers left the room, Ms. Courtney asked whether the video recording machinery would continue to record; she was told that it would. The officers left the room, but watched the juvenile and his guardian on a screen in the detectives' room. Speaking in low tones, the juvenile and Ms. Courtney began to exchange Ms. Courtney's cellular telephone (phone). The juvenile first took the phone, entered some text, and showed it to her. She entered some text and returned the phone to him. After about thirty seconds, while the juvenile was entering text on the phone, Pina returned to the interview room and told the juvenile to stop. He complied and returned the phone to Ms. Courtney. When Pina left them alone this time, they did not speak any more. Ms. Courtney broke into tears and hugged the juvenile until Pina and Dunham returned and resumed the interrogation at 11:50 P.M.

The interview continued for another twenty minutes. The juvenile first told the officers that a friend of his did the

shooting, but when pressed further, he ultimately admitted that he shot the gun. During the rest of the interview, Ms. Courtney used her phone without any objection from the officers. The interrogation ended shortly after the juvenile's confession.

The juvenile was charged, and later indicted, as a youthful offender for armed assault with intent to murder, G. L. c. 269, § 18(b); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b); and unlawful carrying of a firearm, G. L. c. 265, § 10(a). After the motion judge decided the juvenile's motion to suppress statements, the Commonwealth appealed from the partial suppression order, the juvenile cross-appealed from the partial denial of his motion, and a single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory appellate review.[3]

1. <u>Opportunity to consult with interested adult</u>. "Special caution . . . must be exercised in examining the validity of inculpatory statements made by juveniles." <u>Commonwealth</u> v.

---

[3] The juvenile argues that a different Juvenile Court judge abused his discretion in allowing the Commonwealth to file its notice of appeal and application for leave to appeal late. See <u>Commonwealth</u> v. <u>Jordan</u>, 469 Mass. 134, 147-148 (2014); Mass.R.Crim.P. 15(b)(1), as appearing in 422 Mass. 1501 (1996). Mindful of the fact that the single justice has already determined that the appeal warrants interlocutory review, we find no reason to disturb the Juvenile Court judge's determination that the Commonwealth's failure to timely file its notice and application was the result of excusable neglect; therefore, we focus our discussion on the merits. See <u>id</u>. at 149 & n.26.

MacNeill, 399 Mass. 71, 74 (1987), quoting from Commonwealth v.
King, 17 Mass. App. Ct. 602, 609 (1984).  In general, when
police interrogation involves a juvenile over the age of
fourteen,[4] as is the case here, the juvenile "may properly waive
his constitutional rights if, after having been advised of those
rights, he was afforded an opportunity to consult with an
interested adult who was informed of and understood those
rights."  Commonwealth v. McCra, 427 Mass. 564, 567 (1998).[5]

Whether the juvenile had a "realistic opportunity" to
consult is the critical question, not whether he actually
availed himself of the opportunity.  Commonwealth v. MacNeill,
supra at 78.  See Commonwealth v. McCra, supra at 567-568.  The
Commonwealth is not required to establish that the adult and
juvenile actually had a private consultation.[6]  Commonwealth v.

---

[4] Effective September 18, 2013, the Legislature amended the
definitions of "delinquent child" and "youthful offender" to
include seventeen year olds.  St. 2013, c. 84, § 7.  See Watts
v. Commonwealth, 468 Mass. 49, 50-51 (2014).  Accordingly, the
"interested adult" rule now applies to youths under the age of
eighteen.  Id. at 59.

[5] A waiver may still be valid without an opportunity for
consultation so long as the circumstances "demonstrate a high
degree of intelligence, experience, knowledge, or sophistication
on the part of the juvenile."  Commonwealth v. Alfonso A., 438
Mass. 372, 380 (2003), quoting from Commonwealth v. A Juvenile,
389 Mass. 128, 134 (1983).

[6] By contrast, juveniles under the age of fourteen must have
an "actual opportunity" to consult with an interested adult for
their waivers to be valid.  Commonwealth v. Mark M., 65 Mass.

Philip S., 414 Mass. 804, 811-812 (1993). See Commonwealth v. McCra, supra at 568; Commonwealth v. Guthrie G., 66 Mass. App. Ct. 414, 416 (2006), S.C., 449 Mass. 1028 (2007). "The choice of a sixteen year old juvenile not to consult with an available friendly advisor concerning those matters suggests that the juvenile's understanding was such that consultation was unnecessary." Commonwealth v. Alfonso A., 438 Mass. 372, 381 (2003), quoting from Commonwealth v. MacNeill, supra at 79.[7]

In Commonwealth v. Guthrie G., supra, the juvenile faced custodial interrogation at the police station after the police discovered a gun in his bedroom. The juvenile's father met him at the police station to act as an interested adult, and the officer read the Miranda warnings to the juvenile and his father. The father signed the Miranda form.[8] Although the officer did not specifically give the juvenile time to consult with his father about the meaning and consequences of waiving his rights, "either the father or the juvenile could have immediately asked to discuss the warnings privately or sought to

---

App. Ct. 703, 706 (2006). See Commonwealth v. A Juvenile, 389 Mass. at 134.

[7] On the other hand, a juvenile under the age of fourteen is unlikely to fully comprehend his rights without an actual consultation with an interested adult. Commonwealth v. A Juvenile, supra at 134.

[8] The juvenile testified at the motion to suppress that he understood his rights. Commonwealth v. Guthrie G., supra at 416, 420 n.10.

exercise the Miranda rights after they were read." Id. at 420. We concluded that "[t]he presence of the parent and child together" was sufficient to establish that the juvenile had an opportunity to consult with his father. Ibid.

Applying these standards, we agree with the motion judge that the juvenile had an opportunity to consult with his guardian and validly waived his rights before talking to Pina. Pina advised the juvenile of his Miranda rights in Ms. Courtney's presence, and both the juvenile and she signed the waiver form. "Nothing more need be shown to demonstrate that the presence of [his guardian] gave the juvenile a realistic opportunity to get helpful advice if he needed it." Commonwealth v. MacNeill, 399 Mass. at 78.

The Supreme Judicial Court has observed that the "better practice . . . with any juvenile is for the investigating officials explicitly to inform the juvenile's parent, or other interested adult, that an opportunity is being furnished for the two to confer about the juvenile's rights." Commonwealth v. Philip S., 414 Mass. at 811 n.5. The juvenile urges us to require the police affirmatively to provide juveniles an opportunity to confer with an interested adult in private. However, the Supreme Judicial Court has specifically declined to impose such a requirement, see Commonwealth v. Ward, 412 Mass. 395, 397 (1992); Commonwealth v. Philip S., supra, at 812, and

this court has rejected even the notion that "at a minimum . . . the parent must be physically present with the juvenile for a sufficiently long period of time prior to a waiver of Miranda rights, as would permit consultation should they wish to engage in it." Commonwealth v. Guthrie G., 66 Mass. App. Ct. at 430-431 (Duffly, J., dissenting).

Therefore, the fact that the officers commenced the interrogation immediately after reading the juvenile and his guardian the Miranda rights, without leaving the room or offering the juvenile the opportunity to confer, is without legal significance. The mere presence of the juvenile and his guardian together facilitated "a request by one or both of them for consultation" if they had any "uncertainty in their minds." Id. at 420. The Commonwealth is not required to show more. The judge's partial denial of the motion to suppress was proper.

2. Mid-interrogation request to consult. For about ten minutes after remedying the malfunction in the videorecording machinery, the officers tried to persuade the juvenile to cooperate, even suggesting that he should speak with his guardian about what to do. The juvenile eventually did ask to for an opportunity to speak with Ms. Courtney. The officers left the room, but closely monitored the juvenile and his guardian from the detective's room. When the juvenile and his guardian attempted to communicate privately using the guardian's

phone, Detective Pina quickly interrupted them and told the juvenile not to use the phone.[9]  The motion judge found that the police's actions interfered with the juvenile's opportunity to consult with an interested adult and suppressed any statements following this interference.  We affirm this aspect of the judge's order as well.

When a juvenile has waived his or her Miranda rights after an opportunity to confer with an interested adult, subsequent statements are presumptively admissible at trial.  See Commonwealth v. Torres, 424 Mass. 792, 799 (1997).  However, if the juvenile is not afforded this "genuine opportunity," and the Commonwealth does not make an alternative showing of a "high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile," the statements must be suppressed. Commonwealth v. Alfonso A., 438 Mass. at 384, quoting from Commonwealth v. A Juvenile, 389 Mass. 128, 134 (1983).  While, as discussed in part 1 supra, the police need not expressly inform the juvenile and the interested adult that they may

---

[9] Having found that the police "advise[d] the guardian not to use the phone, indicating that no phone use is allowed," the motion judge considered it telling that the police did not object to Ms. Courtney's use of her phone once the juvenile started to confess.  Upon review of the videotape, it was clearly the juvenile's use of the phone that prompted the interruption; the police never placed any limitations on Ms. Courtney's use of the phone.  Nonetheless, the police-imposed prohibition on the juvenile's use of the guardian's phone effectively ended any consultation between them.

confer in private, "the police may not properly deny them that right." Commonwealth v. Ward, 412 Mass. at 397 (affirming denial of motion to suppress where mother and juvenile son declined opportunity to consult, but noting, "[w]e would have a different case, of course, if the mother or the son had stated a desire to discuss the matter and the police had not allowed them to do so in private"). "If such a request has been made, it cannot be refused." Commonwealth v. Guthrie G., 66 Mass. App. Ct. at 420.

After a person under custodial interrogation knowingly and voluntarily waives his or her Miranda rights, questioning may continue unless and until the subject makes an "unambiguous invocation" of the right to remain silent. Commonwealth v. Clarke, 461 Mass. 336, 342 (2012), quoting from Berghuis v. Thompkins, [560 U.S. 370, 381] (2010). See Commonwealth v. Hearns, 467 Mass. 707, 716-717 (2014). So, too, if a juvenile requests to consult with an adult to determine whether to invoke his or her Miranda rights after questioning has begun, the police cannot deny that opportunity. The interested adult rule is based on our recognition that most juveniles do not fully understand the significance of Miranda warnings when they hear them, and further, that juveniles often lack the capacity to fully appreciate the consequences of their actions. See Commonwealth v. A Juvenile, supra at 131-132; Commonwealth v.

Alfonso A., supra at 382.  To effectively evaluate and exercise these rights, a juvenile often requires the guidance of an adult "to ensure that his rights do not become forfeit through fear, confusion[,] or intimidation."  Taylor v. Commonwealth, 369 Mass. 183, 192 (1975).  See Commonwealth v. Cain, 361 Mass. 224, 229, n.3 (1972) ("The Miranda warning that the [fifteen year old] boy had a right to consult a lawyer was hollow indeed when he was denied access to his father who, practically speaking, was the only avenue through which he could effectively evaluate and, if he wished, exercise the right to counsel").

Of course, the juvenile's right to request a mid-interview consultation with an interested adult must pertain to the Miranda rights.  The interested adult rule is intended "to ensure that the waiver is knowing and intelligent." Commonwealth v. MacNeill, 399 Mass. at 77.  "Furthermore, the ultimate question is whether the juvenile has understood his rights and the potential consequences of waiving them before talking to the police."  Id. at 79.  The consultation is not intended to substitute for legal advice.  See Commonwealth v. Philip S., 414 Mass. at 812 n.6.

Here, the juvenile unambiguously requested to speak with his guardian to "make sure" whether he should "help" himself and "start cooperating with the case and the investigation," as the officers were urging him or, instead, to end the interview.

Once the juvenile made a request to consult with his guardian about the exercise of his Miranda rights, the police were obliged to afford them the ability to confer in private.  See Hall v. State, 264 Ind. 448, 452 (1976) ("a meaningful consultation can occur only in the absence of the neutralizing pressures which result from police presence").

The Commonwealth contends that once a juvenile has waived his or her Miranda rights, having had one opportunity for consultation with an interested adult, the juvenile no longer may request a private consultation to discuss whether to invoke the right to remain silent and cut off further questioning.  We disagree.  The purpose of the interested adult rule is to put a juvenile on a roughly even footing with an adult defendant in terms of understanding and making a meaningful decision to waive or invoke the Miranda rights.  Accordingly, a sufficiently clear request to consult with an interested adult about those rights, which is essential to the juvenile's understanding and effective exercise of them, must be honored as scrupulously as an adult defendant's request to cut off questioning or to speak with an attorney.  See Commonwealth v. Clarke, 461 Mass. at 343; Michigan v. Mosley, 423 U.S. 96, 104 (1975).

The motion judge determined that the officers' actions "essentially truncated the communication between guardian and defendant."  The Commonwealth concedes that "the police imposed

ground rules that may have had the effect of constraining conversation between the two," but argues that the break in the interrogation alone was sufficient to "allo[w] the juvenile and his guardian to consider whether to continue with the interview or end it, or to continue only with the assistance of an attorney." We agree with the motion judge that in the circumstances of this case, the constraining ground rules imposed by the police deprived the juvenile of a "genuine opportunity" to confer with his guardian about the exercise of his Miranda rights. The motion judge properly suppressed the statements the juvenile made after the police failed to honor his request to consult with an interested adult.

Conclusion. The Commonwealth met its burden of proving that the juvenile initially waived his Miranda rights after an opportunity to consult with an interested adult, but the police deprived the juvenile of an opportunity for meaningful consultation about his Miranda rights when he later asked to speak to his guardian. The order denying the juvenile's motion to suppress in part and allowing the motion in part is affirmed.

So ordered.

COHEN, J. (concurring).  I write separately to comment on our disposition of the juvenile's cross-appeal from the judge's partial denial of the motion to suppress.  I agree that under current law the police are not required to give a juvenile over the age of fourteen an unsolicited opportunity to confer in private with an interested adult before obtaining a waiver of the juvenile's Miranda rights.  However, I believe that the time has come to revisit this issue.

In Commonwealth v. Philip S., 414 Mass. 804, 811 n.5 (1993), the Supreme Judicial Court observed that "the better practice . . . with any juvenile is for the investigating officials explicitly to inform the juvenile's parent, or other interested adult, that an opportunity is being furnished for the two to confer about the juvenile's rights" (emphasis added).  The court further observed that "[a] private consultation . . . clearly is the most conducive means to [an] unconstrained and thorough discussion between the adult and child."  Id. at 812.  In light of what we have learned and continue to learn about the developmental immaturity that persists throughout the teenage years, cf. Roper v. Simmons, 543 U.S. 551, 569-574 (2005), quoting from Johnson v. Texas, 509 U.S. 350, 367 (1993) (recognizing that juveniles older than sixteen remain prone to "ill-considered actions and decisions"), fresh consideration should be given to requiring that the "better practice" and

"most conducive means" identified in <u>Philip S</u>., <u>supra</u>, be followed in all juvenile cases.